JOYCE CARSON HILL, Plaintiff-Appellant v. JAMES HARVEY NEWMAN and PEGGY JOYCE HILL NEWMAN, Defendants-Appellees

No. COA97-1498

(Filed 29 December 1998)

**1. Child Support, Custody, and Visitation— visitation—grandparents—standing**

The trial court properly exercised jurisdiction under N.C.G.S. § 50-13.2A of an action by a maternal grandmother seeking visitation where the grandchildren had been adopted by a second daughter and there was competent evidence that a substantial relationship existed between plaintiff and the two minor grandchildren. However, there was no standing under N.C.G.S. §§ 50-13.1(a), 50-13.2(b1), or 50-13.5(j) because there was no custody dispute and the natural parents had not abandoned or neglected the children, were not unfit, and had not died.

**2. Child Support, Custody, and Visitation— visitation—grandparents—denied**

The trial court did not err in an action for visitation where plaintiff was both the natural and adoptive maternal grandmother

**HILL v. NEWMAN**

[131 N.C. App. 793 (1998)]

of the children but it was apparent from the extensive findings that the court carefully weighed all of the evidence and concluded that it was in the best interest of the children at that time to deny plaintiff visitation rights. It is the best interest of the child and not the best interest of the grandparent that is the polar star in the case and the trial court's findings are binding on appeal if supported by competent evidence.

Appeal by plaintiff from judgment entered 26 June 1997 by Judge A. A. Corbett, Jr. in Lee County District Court. Heard in the Court of Appeals 21 September 1998.

*Staton, Perkinson, Doster, Post, Silverman, Adcock & Boone, P.A., by Jonathan Silverman and Michelle A. Cummins, for plaintiff-appellant.*

*Harrington, Ward, Gilleland & Winstead, by Susan M. Feindel, for defendants-appellees.*

HUNTER, Judge.

Joyce Carson Hill (plaintiff) is the natural and adoptive maternal grandmother of two minor children. Defendant Peggy Newman (Peggy) is plaintiff's daughter, and the natural aunt of the two minor children, and James Harvey Newman is her husband (collectively referred to as defendants). On 30 June 1995, Crystal Helms (Crystal), Peggy's sister and the biological mother of the two minor children, signed a consent to adoption form permitting the defendants to adopt the two minor children. The final adoption order was entered on 18 August 1995. However, on 5 March 1996, Crystal filed a motion in the cause to set aside the final adoption order, which was denied by the trial court on 5 August 1996.

At some point, plaintiff became dissatisfied with the amount of time she was able to spend with her grandchildren. Therefore, on 5 March 1996, plaintiff filed an action wherein she sought visitation with her two grandchildren pursuant to N.C. Gen. Stat. § 48-23(2a), which provides that "a biological grandparent is entitled to visitation rights with the adopted child as provided in [N.C. Gen. Stat. §§] 50-13.2(b1), 50-13.2A, and 50-13.5(j)." N.C. Gen. Stat. § 48-23(2a) (1991) (replaced by N.C. Gen. Stat. § 48-4-105 effective 1 July 1996). At the time plaintiff filed her request for visitation, defendants' family was intact and no custody proceeding was ongoing.

**HILL v. NEWMAN**

[131 N.C. App. 793 (1998)]

On 12 March 1996, defendants filed a motion to dismiss plaintiff's action pursuant to Rule 12(b)(6) of the N.C. Rules of Civil Procedure for failure to state a claim for which relief can be granted, which was denied by the trial court. Defendants subsequently filed a motion for summary judgment pursuant to Rule 56(c), which the trial court reserved ruling upon pending the parties participation in a psychological evaluation. Finally, the trial court entered an order on 26 June 1997 in which it concluded "[t]hat the parties do not get along and will probably never get along and therefore it is not in the best interest of the minor children for the Plaintiff to have any visitation with the minor children."

On appeal, plaintiff contends the trial court abused its discretion in denying her visitation with the two minor children because such visitation was in the best interests of the children, and because the trial court's conclusion was not supported by competent evidence. Defendants, on the other hand, contend first that plaintiff did not have standing to sue for visitation rights; and second, that even if plaintiff did have such standing, the trial court's conclusions were supported by competent evidence and should be affirmed. Before addressing plaintiff's claims, we will first address defendants' contention that plaintiff did not have standing to file a claim seeking visitation.

## I. Plaintiff's Standing to Seek Greater

## Visitation Rights With Her Minor Grandchildren

There are essentially four N.C. General Statutes that deal with the visitation rights of grandparents: N.C. Gen. Stat. §§ 50-13.1(a), 50-13.2(b1), 50-13.5(j) and 50-13.2A. For purposes of clarity, we will address each of these four statutes separately to determine if any one of them is sufficient to grant standing to plaintiff in this case.

### A. N.C. Gen. Stat. § 50-13.1(a):

[1] N.C. Gen. Stat. § 50-13.1(a) is "a broad statute, covering a myriad of situations in which custody disputes are involved." *McIntyre v. McIntyre*, 341 N.C. 629, 631, 461 S.E.2d 745, 747 (1995) (citation omitted). It is a general statute, and therefore must be read in harmony with the more specific statutes dealing with grandparent visitation. In general, it states:

Any parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may

institute an action or proceeding for the custody of such child, as hereinafter provided. Unless a contrary intent is clear, the word "custody" shall be deemed to include custody or visitation or both.

N.C. Gen. Stat. § 50-13.1(a) (1995). In *McIntyre*, our Supreme Court concluded that this statute was available for grandparents who sought visitation rights in two situations: (1) when the parents are unfit, have abandoned or neglected the child, or have died; or, (2) when, by reason of separation or divorce, custody is at issue between the parents. *McIntyre v. McIntyre*, 341 N.C. at 632, 461 S.E.2d at 748. Here, since neither of these situations is present, N.C. Gen. Stat. § 50-13.1(a) is not applicable and may not be used to establish standing for plaintiff.

B. N.C. Gen. Stat. § 50-13.2(b1):

Next, N.C. Gen. Stat. § 50-13.2(b1) provides:

An order for custody of a minor child may provide visitation rights for any grandparent of the child as the court, in its discretion, deems appropriate. As used in this subsection, "grandparent" includes a biological grandparent of a child adopted by a stepparent or a relative of the child where a substantial relationship exits between the grandparent and the child. Under no circumstances shall a biological grandparent of a child adopted by adoptive parents, neither of whom is related to the child and where parental rights of both biological parents have been terminated, be entitled to visitation rights.

N.C. Gen. Stat. § 50-13.2(b1) (1995). By its very language, this is a special statute which applies in situations where the trial court is involved in an ongoing custody dispute and the grandparents intervene in the matter in order to assert their right to visitation with the grandchildren. However, since no custody dispute is involved in this case, this statute is not applicable and may not be used by plaintiff to assert her standing in this case.

C. N.C. Gen. Stat. § 50-13.5(j):

Next, N.C. Gen. Stat. § 50-13.5(j) states:

In any action in which the custody of a minor child has been determined, upon a motion in the cause and a showing of changed circumstances pursuant to [N.C. Gen. Stat. §] 50-13.7, the

grandparents of the child are entitled to such custody or visitation rights as the court, in its discretion, deems appropriate. As used in this subsection, "grandparent" includes a biological grandparent of a child adopted by a stepparent or a relative of the child where a substantial relationship exists between the grandparent and the child. Under no circumstances shall a biological grandparent of a child adopted by adoptive parents, neither of whom is related to the child and where parental rights of both biological parents have been terminated, be entitled to visitation rights.

N.C. Gen. Stat. § 50-13.5(j) (1995). In enacting this special statute, the legislature sought to protect the rights of grandparents by enabling them to make a motion in the cause for custody or visitation after the custody of the minor child had already been determined. *See McIntyre v. McIntyre*, 341 N.C. at 633, 461 S.E.2d at 748-749. However, again, since this case does not involve a custody dispute, this statute is not applicable and may not be used to establish plaintiff's standing in this case.

D. N.C. Gen. Stat. § 50-13.2A:

Finally, N.C. Gen. Stat. § 50-13.2A was enacted by the legislature in order to "allow[] grandparents of a minor child who has been adopted by a stepparent or a relative of the child to institute an action for visitation." *Id.* at 633, 461 S.E.2d at 749. This statute provides, in pertinent part:

A biological grandparent may institute an action or proceeding for visitation rights with a child adopted by a stepparent or a relative of the child where a substantial relationship exists between the grandparent and the child. Under no circumstances shall a biological grandparent of a child adopted by adoptive parents, neither of whom is related to the child and where parental rights of both biological parents have been terminated, be entitled to visitation rights. A court may award visitation rights if it determines that visitation is in the best interest of the child. . . .

N.C. Gen. Stat. § 50-13.2A (1995). Under the explicit language of this special statute, a grandparent seeking greater visitation rights with his/her minor grandchildren would have standing to bring such an action under this statute so long as "a substantial relationship exists between the grandparent and the child." *Id.* In this case, there is com-

petent evidence in the record to support a finding that a substantial relationship existed between plaintiff and her two minor grandchildren, in that at all relevant times, plaintiff lived in close proximity to her grandchildren, and in fact had helped raise the grandchildren from birth. Further, prior to the adoption taking place in June 1995, the grandchildren had resided at plaintiff's home for approximately eight months. Therefore, since there is competent evidence in the record that a substantial relationship existed, the trial court properly exercised jurisdiction under N.C. Gen. Stat. § 50-13.2A to decide the case on its merits.

II. The Trial Court's Conclusion Denying Visitation to Plaintiff

[2] Next, we address whether the trial court erred in denying plaintiff's request for visitation pursuant to N.C. Gen. Stat. §§ 48-23(2a) and 50-13.2A. As N.C. Gen. Stat. § 50-13.2A notes, the trial court has the authority to grant visitation to grandparents if "it determines that visitation is in the best interest of the child[ren]." N.C. Gen. Stat. § 50-13.2A. Here, it is apparent from the extensive findings made by the trial court that it carefully weighed all of the evidence, and in its opinion, it was in the best interest of the children, at that time, to deny plaintiff visitation rights. The question presented here, therefore, is whether this Court should find that, as a matter of law, the trial court was required to come to a different conclusion and award visitation rights to plaintiff as requested. *See Newsome v. Newsome*, 42 N.C. App. 416, 426, 256 S.E.2d 849, 855 (1979).

It has long been held that custody cases, including those involving visitation, are difficult, such that the trial court, "who has the opportunity to see and hear the parties and the witnesses, is vested with broad discretion" in resolving these controversies. *Blackley v. Blackley*, 285 N.C. 358, 362, 204 S.E.2d 678, 681 (1974); *see also Newsome v. Newsome*, 42 N.C. App. at 426, 256 S.E.2d at 855 (where the court held that the trial court is granted broad discretionary authority in custody cases, since it "has the opportunity to see the parties in person and to hear the witnesses. [It] can detect tenors, tones and flavors that are lost in the bare printed record read months later by appellate judges"); *see also Kerns v. Southern*, 100 N.C. App. 664, 666, 397 S.E.2d 651, 652 (1990) (where this Court held that it is within the trial court's discretion to grant grandparents' visitation rights with their minor grandchildren). Further, a trial court's decision should not be reversed on a whim simply because the appellate court believes, based upon its reading of the cold record, that the trial

court erred; rather, a trial court should only be reversed if the dissatisfied party demonstrates that the trial court committed a manifest abuse of discretion. *Newsome v. Newsome*, 42 N.C. App. at 426, 256 S.E.2d at 855.

In *Petersen v. Rogers*, 337 N.C. 397, 445 S.E.2d 901 (1994), our Supreme Court reaffirmed the oft cited principle that a parent has the paramount right to the care, custody and nurturing of his/her child, and that the State could neither "supply nor hinder" this most basic right. *Id.* at 400-401, 445 S.E.2d at 903. Further, a fundamental part of this "paramount right to custody includes the right to control their children's associations: 'So long as parents retain lawful custody of their minor children, they retain the prerogative to determine with whom their children shall associate.' " *Id.* at 403, 445 S.E.2d at 904-905 (citations omitted).

In that regard, the express provisions of N.C. Gen. Stat. § 48-23 provide that a final order of adoption results in establishing the relationship of parent and child between the adoptive parents and the child, such that "the adopted child becomes legally the child of the adoptive parents and becomes legally a stranger to the bloodline of his natural parents." *Acker v. Barnes*, 33 N.C. App. 750, 751-752, 236 S.E.2d 715, 716, *disc. review denied*, 293 N.C. 360, 238 S.E.2d 149 (1977); *see also* N.C. Gen. Stat. § 48-23 (1991). Therefore, as this Court so eloquently stated in the *Acker* case:

> "[Although] Courts are not insensitive to the yearning of grandparents and other relatives for the company of children in their families . . .[,] such cannot be translated into a legal right without a showing that it is dictated by the needs and welfare of the child. In the absence of such a showing, custodial control goes along with custodial responsibility."

*Id.* at 752, 236 S.E.2d at 716 (citation omitted). "The welfare of the child is the paramount consideration which must guide the Court in exercising [its] discretion. Thus, the [trial court's] concern is to place the child in an environment which will best promote the full development of his physical, mental, moral and spiritual faculties." *Blackley v. Blackley*, 285 N.C. at 362, 204 S.E.2d at 681. Therefore, it is the best interests of the *child*, and not the best interests of the *grandparent*, that is the polar star in this case, despite plaintiff's contrary contention. Further, the trial court's findings are binding on appeal if supported by competent evidence. *Id.*

In this case, the trial court made the following findings:

15. That [plaintiff] testified that [defendants] are the minor children's adoptive parents[,] and it is apparent that [plaintiff] has not accepted the fact that [defendants] are their "parents". She still feels that these children are Crystal's children.

16. That [plaintiff] repeatedly requested visitation with the children; however, [defendants] found it difficult to arrange frequent visitation since they had gotten the children involved in community and church activities and their time was limited.

17. That [defendants] attempted the following visitation with [plaintiff] on four (4) occasions following the adoption:

A. In August, 1995 following the entry of the final order for adoption, Peggy took the minor children to visit [plaintiff] and other friends and relatives in Columbus County and the visit turned out to be very difficult in that [plaintiff] interfered with Peggy's authority as the children's parent.

B. In September, 1995 [plaintiff] was invited to the [d]efendants' home in Sanford for Courtney's birthday. [Plaintiff] brought Cory, Courtney's biological twin brother. [Plaintiff] spent much of the visit crying and upset about Anthony and Courtney living in Sanford and her inability to see them often.

C. In December, 1995 following Christmas, [plaintiff] was invited to the [d]efendants' home in Sanford. She brought gifts from herself and Harold, the children's grandfather and [plaintiff's] ex-husband, and from Crystal and her husband, Ricky. The cards on Crystal's gifts read from "Mommy and Ricky". Peggy became very upset. [Plaintiff] accused [defendants] of taking Anthony from her. [Plaintiff] became extremely distraught and emotional and started out the door to her car. She threatened to take the children and run off with them. [Defendants] restrained [plaintiff] and attempted to calm her down.

D. In January, 1996 Peggy took the minor children to her brother['s] house in Whiteville, North Carolina. Peggy called [plaintiff] to tell her that they were in Whiteville and [plaintiff] called Crystal to tell her that the children were in town. Crystal came over to Peggy's [brother's] house and began hug-

**HILL v. NEWMAN**

[131 N.C. App. 793 (1998)]

ging the children and telling them that "Mommy is here." The children were confused. Peggy confronted Crystal and told her that if there was going to be visitation between her and the children, it needed to be planned so that the children would be prepared for the visit. Crystal then told Peggy that no one was going to keep her from her children and assaulted Peggy by striking her. Crystal then threatened to kill Peggy. All of these events took place in front of the children. Peggy then secured warrants against Crystal for assault and communicating threats but later dropped the charges.

. . .

19. That the events during the attempted visitation have been disturbing to the children.

20. That the adults in these families do not get along at all and probably will never get along.

21. That this Court feels that if visitation is allowed, such visitation will be very disruptive to the children.

The trial court then made the following conclusions of law:

2. That the [d]efendants and the minor children are living in an intact family at this time.

3. That the [p]laintiff has not accepted the fact that the [d]efendants have adopted the minor children and are now their parents.

4. That the parties do not get along and will probably never get along and therefore it is not in the best interest of the minor children for the [p]laintiff to have any visitation with the minor children.

It is apparent from the trial court's findings that it struggled with this decision, carefully considering all of the relevant testimony, and in the end afforded greater credibility to the defendants' testimony. After careful review, we find that the trial court did not exceed its discretionary authority in denying plaintiff's request for visitation, and therefore did not commit an abuse of discretion requiring reversal. As such, we overrule plaintiff's assignments of error.

Affirmed.

Chief Judge EAGLES and Judge LEWIS concur.