634 S.E.2d 561 (2006)
In the Matter of A.P., Minor child.
No. COA05-1105.
Court of Appeals of North Carolina.
September 5, 2006.
Katharine Chester, Siler City, for appellant respondent-mother.
Theresa A. Boucher, Winston-Salem, for petitioner-appellee Forsyth County Department of Social Services.
*562 Womble, Carlyle, Sandridge & Rice, P.L.L.C., by Randi B. Weiss, Winston-Salem, for guardian ad litem-appellee.
Robert T. Newman, Siler City, for appellee respondent-father.
ELMORE, Judge.
This case arises from a custody dispute between A.P.'s mother (respondent), the Forsyth County Department of Social Services (DSS), and A.P.'s biological father, William. For the reasons stated herein, we reverse the decision of the district court and remand for an evidentiary hearing determining who is best suited to care for A.P.
On 7 November 2003 DSS filed a petition alleging: 1) that A.P. was a neglected and dependent juvenile, and 2) that immediate non-secure custody by DSS was needed to protect A.P. DSS filed the petition after its initial intervention into A.P.'s life failed to rectify the circumstances needing attention. DSS had received numerous reports that A.P. was living in an environment injurious to her welfare because her mother and legal father, respondent and Roy, were using drugs, fighting at home, stealing from local merchants, and were not properly caring for A.P. Respondent consented to the placement of A.P. with DSS and at the 9 January 2004 hearing on neglect and dependency did not oppose the allegations in the petition.
As such, the district court granted custody of A.P. to DSS with placement to be "at the discretion of that Agency." A reunification plan was set, and supervised visitation was ordered for all parties. Further, the district court ordered that:
6. William [D.H.] shall comply with the homestudy in Surry County as scheduled by the Department of Social Services for possible placement of [A.P.].
7. The Forsyth County Department of Social Services shall make all necessary investigations as to William [H.'s] suitability to parent [A.P.].
. . .
9. This matter shall be reviewed on February 18, 2004 at 11:45 a.m., or on prior motion of any of the parties.
Prior to this time, respondent informed DSS that William [D.H.] (William) was likely A.P.'s biological father, not Roy as she had indicated to everyone at A.P.'s birth. DSS located William in Surry County, and he had previously been ordered to submit to a paternity test along with Roy. William was proven to be A.P.'s biological father and, as such, began legitimization proceedings. Once he determined that A.P. was his, he expressed strong interest in raising A.P. and being a part of her life.
At the 18 February 2004 review hearing the district court ordered custody to remain with DSS and sanctioned A.P.'s placement with her biological father William.
1. Legal custody of [A.P.] shall remain with Forsyth County Department of Social Services and her placement shall be at the discretion of that Agency.
2. The Court sanctions the placement of [A.P.] in the home of her biological father, William [D.H.] in Surry County. Forsyth County DSS is to monitor the placement and provide a written report to all counsel prior to the next hearing in compliance with the local rules.
Respondent filed notice of appeal from that order.
After at least one more review hearing, the district court held a hearing on 27 September 2004. It is not clear whether that hearing was an initial permanency planning hearing or an additional review hearing; however, the operational effect of the district court's order suggests it was a permanency planning hearing. After various findings, the district court concluded that giving custody of A.P. to her biological father William was in her best interest and closed the case. Respondent appealed.
Respondent argues that the district court abrogated its fact-finding role at the 27 September hearing in granting custody of A.P. to William and wholly relied on reports from DSS. Because we are unable to find any testimony or evidence that was tendered at the hearing other than DSS's report and the arguments of counsel, we must agree.
Our Supreme Court has held that in child custody matters:

*563 [w]henever the trial court is determining the best interest of a child, any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court, subject to the discretionary powers of the trial court to exclude cumulative testimony. Without hearing and considering such evidence, the trial court cannot make an informed and intelligent decision concerning the best interest of the child.
In re Shue, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984). Naturally then, the district court is permitted to receive into evidence and rely on prior court orders and reports by DSS or a guardian ad litem. See In re J.S., 165 N.C.App. 509, 511, 598 S.E.2d 658, 660 (2004); In re Ivey, 156 N.C.App. 398, 402-03, 576 S.E.2d 386, 389-90 (2003). But the district court cannot abrogate its duty as the finder of ultimate facts and instead rely wholly on the reports and previous orders. See In re Harton, 156 N.C.App. 655, 660, 577 S.E.2d 334, 337 (2003) ("When a trial court is required to make findings of fact, it must find the facts specially. The trial court may not simply recite allegations, but must through processes of logical reasoning from the evidentiary facts' find the ultimate facts essential to support the conclusions of law.") (internal quotations and citations omitted).
Here, the transcript of the 27 September hearing determining that custody of A.P. be given to William and the case be closed reveals that no evidence was received and no testimony from any witness was given. Only the counsels for each party involved argued to the district court; and counsels' arguments cannot be considered evidence. See In re D.L., A.L., 166 N.C.App. 574, 582, 603 S.E.2d 376, 382 (2004) (citing State v. Haislip, 79 N.C.App. 656, 658, 339 S.E.2d 832, 834 (1986)).
In that regard, this case is indistinguishable from In re D.L., where this Court reversed a permanency planning order and remanded the matter to the district court for a new hearing when the only piece of evidence offered at the original hearing was a DSS report.
As no evidence was presented by either DSS or [respondent] regarding the permanency plan, the trial court's findings of fact are unsupported. Without any evidence to support its findings, the trial court erred in its conclusions of law. We reverse the permanency plan order as it relates to [respondent] and remand for a new permanency planning hearing where the parties may offer competent, material, and relevant evidence.
Id. at 583, 603 S.E.2d at 382. Relying on In re Harton, the Court noted that without the presentation of evidence it was impossible for the district court to make the necessary findings required by N.C. Gen.Stat. § 7B-907(b) (2005). See id. at 582-83, 603 S.E.2d at 382.
Accordingly, we reverse the district court's order awarding legal custody to William and remand the matter so the trial court can hear evidence from all relevant parties as noted in N.C. Gen.Stat. § 7B-906(c) and make independent findings of fact supporting a custody award. We would note that reversal of the district court's order restores the status quo of the parties leading into the 27 September 2004 hearing pursuant to prior orders, including A.P.'s placement by DSS.
Reversed and remanded.
Judge WYNN concurs.
Judge LEVINSON dissents by separate opinion.
LEVINSON, Judge dissenting.
Preliminarily, I observe that the order on appeal was entered before the 2005 amendments were made to N.C. Gen.Stat. §§ 7B-200, 7B-201, and 7B-402; and before the same 2005 amendments were added to N.C. Gen.Stat. §§ 7B-911 and 50-13.1(i).
Here, the juvenile court has "closed" this juvenile matter and ceased its jurisdiction over this child. In doing so, the juvenile court has returned the parents to their pre-petition status. See In re Dexter, 147 N.C.App. 110, 553 S.E.2d 922 (2001). There is no affirmative obligation on the juvenile court to remain involved in the life of this juvenile for a longer duration. And there is no affirmative obligation on the part of the juvenile court to return the child to the removal parent-household before ceasing its *564 exercise of jurisdiction. The language in the trial court's order referring to a "permanent plan" of custody with the non-removal parent is simply ineffectual. Indeed, where the juvenile court has terminated its jurisdiction, like the case here, setting forth a "permanent plan" is nonsensical; the juvenile court will no longer be holding subsequent hearings and Social Services will no longer have a court-ordered obligation to remain involved with the child or the parents. The parents have now been returned to their pre-petition legal status.
Remanding this matter to the juvenile court "for an evidentiary hearing [to determine] who is best suited to care for A.P." will not accomplish anything. The juvenile court has determined that it no longer needs to be concerned with the child's dependency status that caused it to become involved in the first place. Now, the parents of A.P. have the option to pursue a custody determination in a Chapter 50 proceeding should one or both of them choose to do so.