ANGEL C. RODRIGUEZ AND WIFE, CAROL I. RODRIGUEZ, PLAINTIFFS V. MICHELLE C. RODRIGUEZ, DEFENDANT

No. COA10-690

(Filed 19 April 2011)

**1. Child Custody— subject matter jurisdiction—prior juvenile matter terminated**

The trial court had subject matter jurisdiction to consider a custody claim by grandparents where a prior juvenile matter was terminated by a juvenile review order that placed the physical and legal custody of the children with defendant, ended the

involvement of both DSS and the Guardian ad Litem program, and included no provisions requiring ongoing supervision or court involvement.

## 2. Child Custody and Support— grandparents—standing—custody distinguished from visitation

Plaintiffs had standing to proceed in an action for custody pursuant to N.C.G.S. § 50-13.1(a) where they alleged they were the grandparents of the children and that defendant had acted inconsistently with her parental status and was unfit because she had neglected the children. A grandparent's claim for visitation may be different from a custody claim and has different standing requirements.

## 3. Parent and Child— custody—actions not inconsistent with parental status

The trial court erred by concluding that defendant had acted inconsistently with her parental status and by awarding plaintiffs visitation where defendant did not voluntarily cede parental authority to another party; a finding that defendant's children had been adjudicated dependent in an earlier proceeding was not alone sufficient to establish that defendant acted in a manner inconsistent with her parental status; the trial court's findings did not indicate that defendant had voluntarily engaged in conduct that would trigger the forfeiture of her protected status; and additional findings that could reflect badly on defendant were not sufficient to show conduct inconsistent with being a parent or that she was unfit as a parent.

Judge BRYANT concurring in part and dissenting in part.

Appeal by defendant from order entered 18 February 2010, *nunc pro tunc* 14 January 2010 by Judge Napoleon B. Barefoot, Jr. in District Court, Brunswick County. Heard in the Court of Appeals 30 November 2010.

*Harvey W. Barbee, Jr., and Robert G. Scott, for defendant-appellant.*

*No brief from plaintiff-appellees.*

STROUD, Judge.

Plaintiffs sued for custody of defendant's children and were awarded visitation. Defendant filed a motion to dismiss. The trial court denied defendant's motion to dismiss and awarded plaintiffs

visitation with the children. For the following reasons, we affirm the portion of the trial court order which denied defendant's motion to dismiss, and we reverse that portion of the trial court order which awarded plaintiffs visitation with the children.

## I. Background

This appeal arises from a custody action between plaintiffs, the paternal grandparents of Matt and Nan[1] ("the children"), and defendant, the children's mother. The children's father died in February 2007. In February 2008, the Brunswick County Department of Social Services ("DSS") filed a petition alleging the children were abused, neglected, and dependent, and the children were removed from defendant's legal and physical custody. On 3 March 2008, plaintiffs initiated this Chapter 50 action seeking custody of the children; plaintiffs did not intervene in the pending juvenile matter.[2] In April 2008, the juvenile court adjudicated the children dependent, but not abused or neglected. In July 2008, the children were returned to the physical custody of defendant by the juvenile court. In November 2009, defendant filed an answer and a motion to dismiss the custody action filed by plaintiffs. On 18 February 2010, *nunc pro tunc* 14 January 2010, the trial court denied defendant's motion to dismiss and determined that "defendant ha[d] acted inconsistently with her constitutionally protected status as a parent . . ., and it is in the best interests of the minor children that their primary placement be with her, with secondary custody in the form of visitational [sic] privileges to the Plaintiffs[.]" Defendant appeals.

## II. Subject Matter Jurisdiction

This case presents two issues regarding subject matter jurisdiction. The first issue, regarding the exclusive jurisdiction of the juvenile court, we raise *sua sponte*. *State v. Webber*, 190 N.C. App. 649, 650, 660 S.E.2d 621, 622 (2008) ("It is well-established that the issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court *sua sponte*."). The second issue, regarding the denial of defendant's motion to dismiss for plaintiffs' lack of standing, was argued by the appellant. *See Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16

1. Pseudonyms have been used to protect the identity of the minors.

2. Although the record shows that plaintiffs had visitation with the children when they were in the custody of DSS, it does not demonstrate that plaintiffs intervened in the juvenile proceeding or that any juvenile order addressed their claims as to the children.

("If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim."), *disc. review denied*, 359 N.C. 631, 613 S.E.2d 688 (2005).

> Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal. Subject-matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. Subject-matter jurisdiction derives from the law that organizes a court and cannot be conferred on a court by action of the parties or assumed by a court except as provided by that law. When a court decides a matter without the court's having jurisdiction, then the whole proceeding is null and void, *i.e.*, as if it had never happened. Thus the trial court's subject-matter jurisdiction may be challenged at any stage of the proceedings.

*McKoy v. McKoy*, ––– N.C. App. –––, –––, 689 S.E.2d 590, 592 (2010) (citations and quotation marks omitted).

A. Juvenile Court Jurisdiction

[1] While the record shows that the juvenile court obtained jurisdiction over the children and adjudicated them as dependent, it does not clearly demonstrate that the juvenile court terminated its jurisdiction. On 22 February 2008, the Brunswick County Department of Social Services filed its petition alleging abuse, neglect, and dependency. Soon thereafter, on 3 March 2008, plaintiffs filed their Chapter 50 complaint seeking custody of the children.[3] Thus, the juvenile court obtained jurisdiction over the minor children before the filing of plaintiffs' complaint. *See* N.C. Gen. Stat. § 7B-200(a) (2007) ("The court has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent."). N.C. Gen. Stat. § 7B-201(a) provides:

> When the court obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by order of the court or until the juvenile reaches the age of 18 years or is otherwise emancipated, whichever occurs first.

N.C. Gen. Stat. § 7B-201(a) (2007). Here, as the juvenile court obtained jurisdiction over the children, *see* N.C. Gen. Stat. § 7B-200(a), the juvenile court had continuing exclusive jurisdiction unless jurisdiction was "terminated by order of the court[.]" N.C. Gen. Stat. §§ 7B-200(a), -201(a).

---

3. Although the complaint does not refer to any statute, it is obvious from the factual allegations and request for relief that it was based upon N.C. Gen. Stat. § 50-13.1(a).

RODRIGUEZ v. RODRIGUEZ

[211 N.C. App. 267 (2011)]

The record on appeal before our Court did not include any orders from the juvenile court subsequent to the 5 May 2008 adjudication order. Under these circumstances, it is appropriate for this Court to take judicial notice of the 4 August 2008 juvenile review order which was entered in the juvenile case. *See In re Stratton,* 159 N.C. App. 461, 462, 583 S.E.2d 323, 324 (referring to an order terminating the parental rights of the appellant by stating, "[t]his Court is entitled to take judicial notice of this recent order"), *disc. review denied and appeal dismissed,* 357 N.C. 506, 588 S.E.2d 472 (2003). Thus, we must consider whether the juvenile review order is an order which terminates the jurisdiction of the juvenile court under N.C. Gen. Stat. § 7B-201(a). Unfortunately, the juvenile review order does not make the answer to this question obvious.

In the juvenile review order, the juvenile court made the following findings of fact:

5. That it is in the best interest of the minor children that they continue in the physical custody of their mother, Michelle Rodriguez, and that legal custody be returned to her.

6. That continued involvement by either the Department of Social Services or the Guardian ad Litem is unnecessary.

The juvenile court ordered:

1. That the juveniles are continued in the physical custody of their mother, Michelle Rodriguez, and legal custody is returned to her as well. Ms. Rodriguez shall continue to provide dental and medical care for the children. They shall continue to receive speech, and occupational therapy and psychological therapy.

2. That any prior custody order placing the minor children with the Department of Social Services is vacated.

3. That the Department of Social Services and the Guardian ad Litem program are relieved of any further involvement in this case.

Although the juvenile review order continued physical custody with defendant and returned legal custody to defendant, it included a provision requiring her to continue providing "dental and medical care for the children[,]" but without setting out any details as to the actual "dental and medical care" she must provide. The juvenile review order further provided that the children "shall continue to receive speech, and occupational therapy and psychological therapy"

but did not state who was to provide the therapy. By relieving DSS and the Guardian ad Litem program of responsibility as to the children and by vacating "any prior custody order" the juvenile court seems to have indicated its intent to end its involvement with the children entirely.

In *In re S.T.P.*, this Court concluded that merely ordering that a case is closed is not sufficient to terminate jurisdiction. —— N.C. App. ——, ——, 689 S.E.2d 223, 227 (2010). In addition, relieving the Department of Social Services of further responsibility in a case does not terminate jurisdiction of the juvenile court. *See In re Baby Boy Scearce*, 81 N.C. App. 531, 542, 345 S.E.2d 404, 411, *disc. review denied*, 318 N.C. 415, 349 S.E.2d 589 (1986). We find that this case is distinguishable from *S.T.P.* and *Scearce* as the juvenile review order here contains additional language which, upon consideration of the order as a whole, we conclude terminates jurisdiction of the juvenile court.

In *S.T.P.*, the trial court noted that in the order which "closed" the case that

> neither Mother nor Father were returned to their pre-petition legal status. The maternal grandmother continued to be the legal guardian for S.T.P. for over six years. The plain language of N.C. Gen. Stat. § 7B-201(b) states that when the district court's jurisdiction terminates, the legal status of the juvenile and the custodial rights of the parties shall revert to the status they were before the juvenile petition was filed, unless applicable law or a valid court order in another civil action provides otherwise.

*S.T.P.* at ——, 689 S.E.2d at 227 (citation and quotation marks omitted). In contrast to *S.T.P.*, the juvenile review order returned defendant herein to her status prior to the filing of the petition, as she kept physical custody and regained legal custody of the children. In *Scearce*, the order which relieved the Department of Social Services of responsibility as to the juvenile also

> found, after numerous days of testimony, that the best interest of Baby Boy Scearce would be served by awarding legal custody to his foster parents with limited visitation privileges to the child's father. The father's visitations with the child are to be monitored by the Durham Community Guidance Clinic for Children and Youth in Durham and the Guidance Clinic is to report to the trial court concerning the visitations. The trial court has not terminated its jurisdiction over the child, nor have the responsibilities

of the guardian ad litem been terminated by the court. The participation of DSS in this matter is not statutorily required or as a practical matter necessary. We hold that the trial court did not err in relieving DSS of any further responsibility in this matter.

*Scearce* at 542, 345 S.E.2d at 411. In *Scearce*, although DSS ceased its involvement with the case, the order anticipated ongoing supervision of visitation and did not establish a permanent placement for the juvenile. *Id.*

Because the juvenile review order herein placed the children in both the physical and legal custody of defendant, ended involvement of both DSS and the Guardian ad Litem program, and included no provisions requiring ongoing supervision or court involvement, we conclude that the order terminated the jurisdiction of the juvenile court over the children as contemplated by N.C. Gen. Stat. § 7B-201(a). Accordingly, the trial court had subject matter jurisdiction to consider plaintiffs' custody claim as the juvenile matter had been terminated; however, we stress the need for the parties to include sufficient documentation in the record to demonstrate subject matter jurisdiction and the need for the juvenile courts to be mindful of the requirements of N.C. Gen. Stat. § 7B-201(a) when terminating juvenile court jurisdiction.

B. Standing

[2] Defendant first argues that "the trial court erred in denying her motion to dismiss . . . for lack of standing." (Original in all caps.) At this point, we should make a distinction which has not been clearly made in many cases: Although it is axiomatic in custody disputes *between parents* that "[v]isitation privileges are but a lesser degree of custody[,]" *Clark v. Clark*, 294 N.C. 554, 575-76, 243 S.E.2d 129, 142 (1978), when a grandparent is seeking visitation with grandchildren, a claim for visitation may be distinct from a claim for custody and standing requirements differ for each claim. *See Perdue v. Fuqua*, 195 N.C. App. 583, 586, 673 S.E.2d 145, 148 (2009) ("[O]ur Courts have distinguished grandparents' standing to seek visitation from grandparents' standing to seek custody. In order for a grandparent to initiate a proceeding for visitation, there must be an ongoing custody proceeding and the child's family must not be an intact family. . . . In contrast, a grandparent initiating a proceeding for custody must allege unfitness of a parent due to neglect or abandonment."). There are four statutes under which grandparents can bring a cause of action for custody or visitation. *See Penland v. Harris*, 135 N.C. App. 359, 361, 520 S.E.2d 105, 106 (1999). While plaintiffs clearly requested custody and not vis-

itation in their complaint, they did not clearly state the statutory basis of their claim.

The first of the four statutes under which a grandparent, or "[a]ny parent, relative, or other person" may seek custody is N.C. Gen. Stat. § 50-13.1(a) which provides that

> [a]ny parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child, as hereinafter provided. . . . Unless a contrary intent is clear, the word "custody" shall be deemed to include custody or visitation or both.

N.C. Gen. Stat. § 50-13.1(a) (2007). "When grandparents initiate custody [as opposed to visitation] lawsuits under G.S. § 50-13.1(a), . . . the grandparent must show that the parent is unfit or has taken action inconsistent with her parental status in order to gain custody of the child." *Eakett v. Eakett* 157 N.C. App. 550, 553, 579 S.E.2d 486, 489 (2003); *see also Perdue* at 586, 673 S.E.2d at 148 (2009) ("Despite the statute's, [N.C. Gen. Stat. § 50-13.1(a)], broad language, our Courts have distinguished grandparents' standing to seek visitation from grandparents' standing to seek custody. In order for a grandparent to initiate a proceeding for visitation, there must be an ongoing custody proceeding and the child's family must not be an intact family. . . . In contrast, *a grandparent initiating a proceeding for custody must allege unfitness of a parent due to neglect or abandonment.*" (emphasis added)). Here, plaintiffs alleged that defendant had acted inconsistently with her parental status and was unfit in that she neglected the children. Therefore, plaintiffs had standing to bring a custody action pursuant to N.C. Gen. Stat. § 50-13.1(a). *See Eakett* at 553, 579 S.E.2d at 489.

The second statute under which grandparents may seek visitation is N.C. Gen. Stat. § 50-13.2(b1) which provides that "[a]n order for custody of a minor child may provide visitation rights for any grandparent of the child as the court, in its discretion, deems appropriate." N.C. Gen. Stat. § 50-13.2(b1) (2007). N.C. Gen. Stat. § 50-13.2(b1) applies to claims for visitation and not for primary physical and legal custody, and thus it is inapplicable to this case. *See Hill v. Newman,* 131 N.C. App. 793, 796, 509 S.E.2d 226, 229 (1998) ("By its very language, [N.C. Gen. Stat. § 50-13.2(b1)] is a special statute which applies in situations where the trial court is involved in an ongoing custody dispute and the grandparents intervene in the matter in order

to assert their right to visitation with the grandchildren.") Under this statute, "[i]n order for a grandparent to initiate a proceeding for visitation, there must be an ongoing custody proceeding and the child's family must not be an intact family."[4] *Perdue* at 586, 673 S.E.2d at 148. Plaintiffs did not allege a visitation claim under N.C. Gen. Stat. § 50-13.2(b1), but rather made a request for custody.

The final two statutes for custody or visitation, N.C. Gen. Stat. §§ 50-13.2A and -13.5(j), are inapplicable as this case does not involve adoption or a motion for a change of custody based upon a change in circumstances. *See Penland* at 361, 520 S.E.2d at 107 (A.G.S. § 50-13.5(j) permits a grandparent to petition for custody or visitation due to changed circumstances in those actions where custody has previously been determined. . . . G.S. § 50-13.2A, permits a biological grandparent to institute an action for visitation rights where the minor child has been adopted by a step-parent or relative of the child, and a substantial relationship exists between the grandparents and the child.").

Defendant contends that plaintiffs did not have standing because "they have not made any allegations regarding the nature of their relationship with the minor children and that the absence of any such allegations bars them from bringing a claim for custody of the children" pursuant to *Ellison v. Ramos*, 130 N.C. App. 389, 502 S.E.2d 891 (1998). However, defendant's reliance on *Ellison* is misplaced. *Ellison* involved a plaintiff, Ms. Ellison, who sued for custody of the child of Mr. Ramos, Ms. Ellison's former " 'intimate companion[.]' " *Ellison* at 390-91, 502 S.E.2d at 892. Here, as distinguished from *Ellison*, the plaintiffs are biologically related to the children whose custody is being litigated. Furthermore, *Ellison* specifically limits its holding by

> not[ing] that our decision does not encompass all potential situations of third party/natural parent custody disputes. In this respect, it may fall short of plaintiff's apparent desire for us to establish a standing standard for all third party/natural parent custody cases. After due consideration, it would seem to us that at this time drawing a bright line for all such cases would be unwise. It may be that such a line should be drawn at some point in the future, after our courts have considered more cases in light of the *Petersen* and *Price* holdings, and we do not mean to fore-

---

4. A single parent (who is not separated or divorced from the children's other parent) living with her children constitutes an intact family. *Fisher v. Gaydon*, 124 N.C. App. 442, 445, 477 S.E.2d 251, 253 (1996), *disc. review denied*, 345 N.C. 640, 483 S.E.2d 706 (1997).

close such action. However, given the relative newness of the application of the standing doctrine in this area, there are a potentially vast number of unexplored fact patterns which could underlie such cases. As a result, any rule crafted now would face a serious risk of stumbling upon unforeseen pitfalls. Because the potential consequences to a child's welfare would be exceptionally serious, we decline to draw a generic bright line test. Instead, *we confine our holding to an adjudication of the facts of the case before us: where a third party and a child have an established relationship in the nature of a parent-child relationship,* the third party does have standing as an other person under N.C. Gen. Stat. § 50-13.1(a) to seek custody.

*Ellison* at 395, 502 S.E.2d at 894-95 (emphasis added).

We thus conclude that plaintiffs had standing to proceed in an action for custody pursuant to N.C. Gen. Stat. § 50-13.1(a) as they alleged they are the grandparents of the children and that defendant had acted inconsistently with her parental status and was unfit because she had neglected the children. *See Eakett* at 553, 579 S.E.2d at 489. Therefore, the trial court properly denied defendant's motion to dismiss for lack of standing. This argument is overruled.

### III. Acts Inconsistent with Parental Status

[3] Defendant next contends that "the trial court erred by concluding as a matter of law that the defendant acted inconsistently with her parental rights in that its conclusion is not adequately supported by its findings of fact." (Original in all caps.) "Whether . . . conduct constitutes conduct inconsistent with the parents' protected status presents a question of law and, thus, is reviewable *de novo*[.]" *Speagle v. Seitz*, 141 N.C. App. 534, 536, 541 S.E.2d 188, 190 (2000) (citation and quotation marks omitted), *reversed on other grounds*, 354 N.C. 525, 557 S.E.2d 83 (2001), *cert. denied*, 536 U.S. 923, 153 L. Ed. 2d 778 (2002).

Parents have a fundamental right "to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 147 L. Ed. 2d 49, 57 (2000). As long as a parent maintains his or her paramount interest, "a custody dispute with a nonparent regarding those children may not be determined by the application of the 'best interest of the child' standard." *Boseman v. Jarrell*, —— N.C. ——, ——, 704 S.E.2d 494, 503 (2010) (citation omitted). However, the paramount status of parents may be lost "in one of two ways: (1) by a finding of unfitness of the natural parent, or (2) where the natural parent's conduct is inconsistent with his or her

constitutionally protected status." *David N. v. Jason N.*, 359 N.C. 303, 307, 608 S.E.2d 751, 753 (2005).

While "[u]nfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy[,]" other behavior can also rise to this level which must be considered on a case-by-case basis. *Price v. Howard*, 346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997).

> When examining a legal parent's conduct to determine whether it is inconsistent with his or her constitutionally-protected status, the focus is not on whether the conduct consists of good acts or bad acts. Rather, the gravamen of inconsistent acts is the volitional acts of the legal parent that relinquish otherwise exclusive parental authority to a third party.

*Mason v. Dwindell*, 190 N.C. App. 209, 228, 660 S.E.2d 58, 70 (2008) (quotation marks omitted).

Accordingly, relevant to the case-by-case determination to be made here are defendant's "volitional acts" involved in the placement of her children with DSS. *Id.* In fact, "the specific question to be answered in cases such as this one is: 'Did the legal parent act inconsistently with her fundamental right to custody, care, and control of her child and her right to make decisions concerning the care, custody, and control of that child?' " *Estroff v. Chatterjee* 190 N.C. App. 61, 69 660 S.E.2d 73, 78 (2008). "[I]n answering this question, it is appropriate to consider the legal parent's intentions regarding the relationship between his or her child and the third party during the time that relationship was being formed and perpetuated." *Id.*

> Thus . . . the court's focus must be on whether the legal parent has voluntarily chosen to create a family unit and to cede to the third party a sufficiently significant amount of parental responsibility and decision-making authority to create a permanent parent-like relationship with his or her child. The parent's intentions regarding that relationship are necessarily relevant to that inquiry. By looking at both the legal parent's conduct and his or her intentions, we ensure that the situation is not one in which the third party has assumed a parent-like status on his or her own without that being the goal of the legal parent.

*Id.* at 70, 660 S.E.2d at 78-79. However, our Supreme Court has "recognize[d] that there are circumstances where the responsibility of a parent to act in the best interest of his or her child would require a temporary relinquishment of custody[.]" *Price* at 83, 484 S.E.2d at 537.

Yet in this case, defendant did not voluntarily choose to cede any parental authority to another party; DSS filed a juvenile petition and removed the children from her custody. Here, the trial court found in pertinent part:

13. That in February 2008 there was an incident, which was reported by a school nurse to the principal, that the minor child . . . had suffered some bruising. That, as a result of the same, the Brunswick County Department of Social Services was notified and a petition was drawn with one of the allegations being for dependency as defined by 7B-101(9) of the North Carolina General Statutes.

14. That, as a result of the same, the two (2) minor children were removed from the custody of the Defendant and placed in the legal and physical custody of the Brunswick County Department of Social Services . . . .

15. That on April 22, 2008 the two (2) minor children were adjudicated by clear, cogent and convincing evidence by a District Court Judge to be dependent juveniles in that their mother . . . was unable to provide for their care and supervision at that time due to emotional issues, which included relocation to North Carolina, the untimely traumatic death of the children's father, and some emotional issues related to physical abuse she received at her husband's hands.

16. That as a result of the adjudication both children were placed in the legal custody of the Brunswick County Department of Social Services.

As the trial court also found, the children were returned to the physical custody of defendant in July 2008.

While the trial court properly considered the juvenile court's adjudication order, a finding that defendant's children had been adjudicated dependent in an earlier proceeding is not alone sufficient to establish that defendant has acted in a manner inconsistent with her parental status. *See In re A.P.,* 179 N.C. App. 425, 427-28, 634 S.E.2d 561, 563 (2006) (noting that although the trial court "is permitted to receive into evidence and rely on prior court orders . . . [it] cannot abrogate its duty as the finder of ultimate facts and instead rely wholly on . . . previous orders"), *reversed per curiam on other grounds,* 361 N.C. 344, 643 S.E.2d 588 (2007). The trial court's findings of fact fail to indicate that defendant has voluntarily engaged in con-

duct that would trigger the forfeiture of her protected status; rather, they suggest quite the opposite. Specifically, the trial court noted that the dependency adjudication was based on defendant's inability to provide care based on emotional issues arising from her "relocation to North Carolina, the untimely traumatic death of the children's father, and some emotional issues related to physical abuse she received at her husband's hands." While at the time the juvenile petition was filed there were allegations of bruising on one of the children, neither the trial court's order nor the juvenile adjudication order made any findings of abuse or neglect. The trial court also found that following the juvenile adjudication order, defendant enrolled in private counseling, "has attempted to comply with the temporary orders" involved in this action, and has not "exposed [n]or is a danger to the children[.]"

The only additional findings of fact which could be construed as casting a negative light on defendant include: since her husband's death defendant and the children have lived in four different locations; defendant, at least once, had a "verbal disagreement" with plaintiffs' daughter which resulted in the police being called, and "[d]efendant is high-strung, easily angered and tends to allow her voice to rise as she becomes angry." But these additional findings of fact are not sufficient to show that defendant acted inconsistently with her status as a parent or that she is unfit as a parent. *See Rhodes v. Henderson*, 14 N.C. App. 404, 408, 188 S.E.2d 565, 567 (1972) (determining that use of profane vulgar language and frequent moving were not sufficient findings of fact to conclude that a parent should not have custody of his/her children). Therefore, where there are no further findings addressing defendant's intentions or acts affecting the parent-child relationship, *see Estroff* at 69-70, 660 S.E.2d at 78-79, and there is no finding that defendant is unfit, *see David N.* at 307, 608 S.E.2d at 753, the trial court erred in concluding that defendant had acted inconsistently with her parental status.

IV. Visitation

Defendant's next two arguments are regarding the trial court's award of visitation to the grandparents. As we have concluded that defendant did not act inconsistently with her status as a parent, and the trial court did not make a finding that defendant was unfit, there was no basis for the trial court to grant visitation to the plaintiffs. *See generally Troxel* at 66, 147 L. Ed. 2d at 57.

RODRIGUEZ v. RODRIGUEZ

[211 N.C. App. 267 (2011)]

V. Conclusion

We conclude that plaintiffs had standing to bring a custody action regarding the children, but that the trial court erred in awarding plaintiffs visitation. Accordingly, we affirm the portion of the trial court order which denied defendant's motion to dismiss, and we reverse that portion of the trial court order which awarded plaintiffs visitation with the children.

AFFIRMED IN PART; REVERSED IN PART.

Judge BEASLEY concurs.

Judge BRYANT concurs in part and dissents in part in separate opinion.

BRYANT, Judge, concurring in part, dissenting in part.

I first note that the majority begins their analysis by addressing, *sua sponte*, whether the juvenile court terminated its exclusive jurisdiction by order of the court pursuant to N.C. Gen. Stat. § 7B-200(a) and 201(a). While the majority "stress[es] the need for the parties to include sufficient documentation in the record to demonstrate subject matter jurisdiction and the need for the juvenile courts to be mindful of the requirements of N.C. Gen. Stat. § 7B-201(a) when terminating juvenile court jurisdiction[,]" it concludes that the 4 August 2008 juvenile review order appropriately "terminated the jurisdiction of the juvenile court over the children as contemplated by N.C. Gen. Stat. § 7B-201(a)." Because this issue is not raised on appeal by either party and because this analysis does not affect the outcome of the appeal, I do not agree that it was necessary to address this issue *sua sponte*.

I concur with the portion of the majority opinion affirming the trial court's order that plaintiff grandparents had standing by noting that plaintiffs demonstrated a sufficient relationship with and interest in the children to proceed in an action for custody pursuant to N.C. Gen. Stat. 50-13.1(a). Accordingly, I agree with the majority that the trial court properly denied defendant's motion to dismiss plaintiffs' complaint for lack of standing.

However, as I disagree with the majority's conclusion that the trial court's findings of fact were not sufficient to address defendant's intentions or acts affecting the parent-child relationship, and there-

fore, the trial court erred in concluding that defendant acted inconsistently with her protected parental status, I respectfully dissent.

"In a child custody case, the trial court's findings of fact are binding on this Court if they are supported by competent evidence." *Davis v. McMillian*, 152 N.C. App. 53, 58, 567 S.E.2d 159, 162 (2002) (citation omitted). "[A] trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence." *Adams v. Tessener*, 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001) (citation omitted). However,

> in custody cases, the trial court sees the parties in person and listens to all the witnesses. *Pulliam v. Smith*, 348 N.C. 616, 625, 501 S.E.2d 898, 902-03 (1998). This allows the trial court to "detect tenors, tones and flavors that are lost in the bare printed record read months later by appellate judges." *Newsome v. Newsome*, 42 N.C. App. 416, 426, 256 S.E.2d 849, 855 (1979), *quoted in Pulliam*, 348 N.C. at 625, 501 S.E.2d at 903. Accordingly, the trial court's findings of fact " 'are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary.' " *Pulliam*, 348 N.C. at 625, 501 S.E.2d at 903[.]

*Id.*

Being mindful of the trial court's superior position to observe the parties involved, a review of the record reveals the following: Following the death of the children's father, defendant and her children moved to Las Vegas, Nevada in February 2007 and thereafter to Brunswick County. The dependency petition that brought the children to the attention of Brunswick County Department of Social Services was based on a school nurse reporting bruises on one of the children in February 2008. The dependency adjudication found that defendant "was unable to provide for [her children's] care or supervision due to the emotional issues with which she and the children were dealing." These issues "included relocation to North Carolina, the untimely and traumatic death of [defendant's] husband, the father of her children, by suicide, and the trauma and emotional issues related to physical and mental abuse [defendant] reports she received at her husband's hands." The trial court also found that defendant is "high-strung, easily angered and tends to allow her voice to rise as she becomes angry."

In addition, "conduct inconsistent with the parent's protected status, which need not rise to the statutory level warranting termination of parental rights . . . would result in application of the 'best interest of the child' test[.]" *Speagle v. Seitz*, 354 N.C. 525, 531, 557 S.E.2d 83, 86

(2001). In the case before us, the trial court found that defendant "ha[d] acted inconsistently with her constitutionally protected status as a parent[.]" Particularly, the court also found

> 17. . . . [t]hat the [p]laintiffs appeared to have a great relationship with the children.
>
> . . .
>
> 32. [t]hat . . . it is in the best interests of the minor children that custody be placed and remain with [defendant,] with the [p]laintiffs being allowed visitation/secondary custody[.]"
>
> 33. [t]hat the [p]laintiffs are fit and proper persons to have the secondary custody in the form of visitational privileges, and it is in the best interests of the two (2) minor children `. . . that the [p]laintiffs be awarded child visitational privileges.

Because there was competent evidence in the record, namely the previous adjudication and the trial court's independent observation of defendant's continued emotional issues, I believe that the trial court's findings of fact adequately support its conclusion that defendant acted inconsistently with her protected parental status. Accordingly, I believe the trial court's findings are conclusive on appeal and that there is no error. Such findings and conclusions do not give plaintiffs superior rights over these children, but it does allow plaintiffs, as paternal grandparents, to have visitation with their grandchildren. Therefore, I respectfully concur in part and dissent in part.