689 S.E.2d 223 (2010)
In the Matter of S.T.P.
No. COA09-1281.
Court of Appeals of North Carolina.
February 16, 2010.
*224 Kathleen Arundell Widelski, Charlotte, for petitioner-appellee Mecklenburg County Department of Social Services, Youth and Family Services.
Pamela Newell Williams, Raleigh, for appellee Guardian Ad Litem.
Leslie C. Rawls, Charlotte, for respondent-appellant mother.
Janet K. Ledbetter, Hillsborough, for respondent-appellant father.
STEELMAN, Judge.
Closing a case file is not the equivalent of the trial court terminating its jurisdiction. The district court retained subject matter *225 jurisdiction and could act upon the "Motion in the Cause to Reassume Custody." The district court did not abuse its discretion in determining that termination of Mother's parental rights was in juvenile's best interest.

I. Factual and Procedural Background
S.T.P. was born cocaine positive. Mother has a lengthy history of drug abuse, and she tested positive for cocaine and marijuana at S.T.P.'s birth. The hospital recommended that Mother enter inpatient treatment, but she refused. Both Mother and Father have a criminal history. At the time of S.T.P.'s birth, Mother was homeless but planned to move into her parents' residence.
On 4 February 1999, Mecklenburg County Department of Social Services, Youth and Family Services (DSS) filed a Juvenile Petition alleging that S.T.P. was a neglected and dependent juvenile. On 9 February 1999, Father acknowledged paternity. On 15 March 1999, S.T.P. was adjudicated a neglected and dependent juvenile. On 20 May 1999, the district court entered a Dispositional Order in Mecklenburg County case 99 J 85, which placed S.T.P. in the custody of his maternal grandparents. Mother was incarcerated at that time. Father was ordered to stay away from the maternal grandparents' residence.
In 2004, S.T.P.'s maternal grandfather died from cancer. On 11 August 2006, DSS received a report that Mother was abusing both S.T.P. and the maternal grandmother, and that the maternal grandmother was unable to care for S.T.P. due to medical issues. In September 2006, a safety plan was put in place and signed by the maternal grandmother. On 10 January 2007, DSS received another report regarding the maternal grandmother's substance abuse problems. On 26 January 2007, a family meeting was held between the maternal grandmother and a social worker. Mother was invited but did not attend. The maternal grandmother admitted to using controlled substances and that Mother had moved in with her. She later tested positive for cocaine.
On 29 January 2007, DSS filed a document styled as "Motion In The Cause To Reassume Custody" under file number 99 J 85, seeking to obtain custody of S.T.P. That same day, the district court entered an "Order to Reassume Custody and Schedule Review Hearing," placing S.T.P. in the legal and physical custody of DSS. On 6 February 2007, an Initial (7-Day) Hearing was held pursuant to N.C. Gen.Stat. § 7B-506, at which Mother admitted she had not completed any substance abuse treatment in the past eight years.
On 19 February 2007, the district court entered an Order requiring S.T.P. to remain in DSS custody with the goal of reunification with the maternal grandmother. DSS was given discretion to place S.T.P. back with his maternal grandmother if she complied with her treatment. S.T.P. suffered from asthma, attention deficit hyperactivity disorder (ADHD), and oppositional defiant disorder (ODD). His behavior therapist recommended that he receive special treatment and attend family therapy.
On 9 April 2007, a case plan was put in place for the maternal grandmother requiring her to: (1) maintain suitable housing and provide sufficient income for herself and S.T.P.; (2) attend medical appointments and family therapy for S.T.P.; (3) attend a parenting skills assessment; (4) attend a FIRST assessment; (5) attend outpatient treatment for substance abuse; and (6) submit to random drug screens.
On 26 February 2007, the maternal grandmother began substance abuse treatment, but was discharged on 18 April 2007 due to repeated unexcused absences. On 1 May 2007, a Review Hearing was held, and the district court ordered S.T.P. to remain in DSS custody with a plan for reunification with the maternal grandmother. Mother and the maternal grandmother were allowed visitation and ordered to comply with a case plan. On 18 June 2007, the maternal grandmother tested positive for opiates, and reentered substance abuse treatment.
On 3 October 2007, Mother tested positive for cocaine, and following a show cause order, enrolled in the FIRST Program on 17 October 2007. On 26 November 2007, Mother enrolled in intensive outpatient treatment but was released on 6 December 2007 following a positive drug test for methadone. She *226 was referred to inpatient treatment but refused to attend.
On 26 January 2008, Mother was ordered to complete an inpatient treatment program while she was incarcerated. On 4 April 2008, Mother completed the inpatient treatment program. On 21 April 2008, Mother supplied a breath sample, which showed a blood-alcohol concentration of 0.028. The next day, she was referred to adult mental health services but did not attend any scheduled appointments.
On 26 May 2008, licensed psychologist, Richard E. Bridgette (Dr. Bridgette) completed a written report on his psychological evaluation of S.T.P. Dr. Bridgette opined that S.T.P. needed "a living environment that is stable, conflict-free, and consistent in rules, expectations, and consequences to help him learn to control his own behavior." Dr. Bridgette recommended that S.T.P. remain out of the maternal grandmother's custody. Dr. Bridgette attempted to assess Mother's "psychological and cognitive functioning," but Mother failed to attend either of the two scheduled evaluation appointments.
On 27 May 2008, a Permanency Planning Hearing was held, and the permanent plan for S.T.P. was changed to adoption, with supervised visits between S.T.P., and Mother and the maternal grandmother. Father's whereabouts were unknown. On 28 July 2008, DSS filed a Petition to Terminate Parental Rights for both Mother and Father. On 22 July 2009, the district court entered an order terminating the parental rights of both Mother and Father.
Both Mother and Father appeal.

II. Subject Matter Jurisdiction

A. Standard of Review
"Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question ... [and] is conferred upon the courts by either the North Carolina Constitution or by statute." Harris v. Pembaur, 84 N.C.App. 666, 667, 353 S.E.2d 673, 675 (1987). "Subject matter jurisdiction cannot be conferred by consent or waiver, and the issue of subject matter jurisdiction may be raised for the first time on appeal." In re H.L.A.D., 184 N.C.App. 381, 385, 646 S.E.2d 425, 429 (2007) (citing In re T.R.P., 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006)), aff'd per curiam, 362 N.C. 170, 655 S.E.2d 712 (2008). "The determination of subject matter jurisdiction is a question of law and this Court has the power to inquire into, and determine, whether it has jurisdiction and to dismiss an action ... when subject matter jurisdiction is lacking." In re J.B., 164 N.C.App. 394, 398, 595 S.E.2d 794, 797 (2004) (citations and internal quotations omitted).

B. District Court's Termination of Jurisdiction
In their first argument, both Mother and Father contend that the district court lacked subject matter jurisdiction to act upon the "Motion in the Cause to Reassume Custody" because the district court terminated its jurisdiction over the juvenile on 20 May 1999 when it ordered "Case closed." We disagree.
By statute the district courts of this state are conferred "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C. Gen.Stat. § 7B-200(a) (2007). "When the court obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by order of the court or until the juvenile reaches the age of 18 years or is otherwise emancipated, whichever occurs first." N.C. Gen.Stat. § 7B-201(a) (2007).
The 20 May 1999 Dispositional Order stated, "Court adopts [DSS] recommendations. Custody vested [with maternal] grandparents [DSS] divested. Support may be sought by grandparents through c/s enforcement  [DSS] to provide c/s/e info. Case closed." Both parents argue that the "Case closed" language demonstrates the district court's intent to terminate its jurisdiction.
When a district court terminates its jurisdiction over a juvenile case, there "is no affirmative obligation on the juvenile court to remain involved in the life of [the] juvenile for a longer duration." In re A.P., 179 N.C.App. 425, 429, 634 S.E.2d 561, 563 (2006) (Levinson J., dissenting), rev'd per curiam *227 for reasons stated in dissent, 361 N.C. 344, 643 S.E.2d 588 (2007).
Indeed, where the juvenile court has terminated its jurisdiction, ... the juvenile court will no longer be holding subsequent hearings and Social Services will no longer have a court-ordered obligation to remain involved with the child or the parents. The parents have now been returned to their pre-petition legal status.
Id. at 429, 634 S.E.2d at 564. In the instant case, after the district court's May 1999 order, neither Mother nor Father were returned to their pre-petition legal status. The maternal grandmother continued to be the legal guardian for S.T.P. for over six years. The plain language of N.C. Gen.Stat. § 7B-201(b) states that when the district court's jurisdiction terminates, the "legal status of the juvenile and the custodial rights of the parties shall revert to the status they were before the juvenile petition was filed, unless applicable law or a valid court order in another civil action provides otherwise." N.C. Gen.Stat. § 7B-201(b) (2007).
"Closing" a case does not mean the same thing as "terminating jurisdiction." Each is a separate action with distinct consequences. "Once jurisdiction of the court attaches to a child custody matter, it exists for all time until the cause is fully and completely determined." In re Baby Boy Scearce, 81 N.C.App. 531, 538-39, 345 S.E.2d 404, 409 (citations omitted), disc. review denied, 318 N.C. 415, 349 S.E.2d 589 (1986); see also In re H.L.A.D., 184 N.C.App. 381, 646 S.E.2d 425 (2007). In the instant case, the district court found in its 1999 order that the best interests of S.T.P. would be served by awarding legal custody to his maternal grandparents with limited visitation privileges to Mother. Father was ordered not to "go on or about the property of the maternal grandparents  by court order." DSS was divested of its custody of S.T.P., but the district court did not terminate its jurisdiction over the child. "The participation of DSS ... is not statutorily required or as a practical matter necessary." In re Baby Boy Scearce, 81 N.C.App. at 542, 345 S.E.2d at 411. We hold that the district court did not terminate its jurisdiction by its use of the words "Case closed." Thus, the district court's jurisdiction continued "until terminated by order of the court or until the juvenile reaches the age of 18 years or is otherwise emancipated, whichever occurs first." N.C. Gen.Stat. § 7B-201(a) (2007).
This argument is without merit.
Because we hold that the district court did not terminate its jurisdiction in its 20 May 1999 Dispositional Hearing Order, we decline to address respondents' remaining arguments based upon lack of subject matter jurisdiction.

III. Termination of Parental Rights
In her second argument on appeal, Mother contends that the district court erred when it concluded that it was in the best interest of S.T.P. to terminate Mother's parental rights because the findings of fact do not support this conclusion as a matter of law. We disagree.

A. Standard of Review
The termination of parental rights is a two-step process. In re Shepard, 162 N.C.App. 215, 221, 591 S.E.2d 1, 5 (citations omitted), disc. review denied, 358 N.C. 543, 599 S.E.2d 42 (2004). "During the initial adjudication phase of the trial, the petitioner seeking termination must show by clear, cogent, and convincing evidence that grounds exist to terminate parental rights." Id. (citations omitted). If the trial court determines that a ground for termination exists, the court moves to the disposition stage, where it must determine whether termination is in the best interest of the child. N.C. Gen.Stat. § 7B-1110(a) (2007). Upon review we consider, "based on the grounds found for termination, whether the trial court abused its discretion in finding termination to be in the best interest of the child." Shepard, 162 at 222, 591 S.E.2d at 6 (citing In re Nolen, 117 N.C.App. 693, 700, 453 S.E.2d 220, 225 (1995)).

B. Analysis
In determining whether termination of parental rights is in the best interest of the juvenile, the district court is required to consider:
(1) The age of the juvenile.

*228 (2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen.Stat. § 7B-1110(a) (2007).
To support its determination that termination of Mother's parental rights was in the best interest of S.T.P., the district court made, in pertinent part, the following findings of fact:
19. That [S.T.P.] has continuously remained in the Petitioner's custody since January 26, 2007.
...
53. That [Mother] does not have the ability to meet her needs as well as [S.T.P.'s] needs. For that reason, the Court cannot find that [Mother] had the ability to contribute any monies to defray the cost of [S.T.P.'s] out of home placement.
54. That neither [Mother nor maternal grandmother] demonstrated an ability to obtain and/or maintain safe, stable, permanent, appropriate, and independent housing. The respondent mother frequently resided with the maternal grandmother. []
...
56. That Ms. Jackson began supervising the visits between [S.T.P., Mother and maternal grandmother] in July 2007. Ms. Jackson expressed concerns about how the respondent mother and maternal grandmother treated [S.T.P.]. They sometimes treated [S.T.P.] as if he were 3 or 4 years old instead of his actual age. The Petitioner also expressed concerns about the appropriateness of some of the gifts given to [S.T.P.].
57. That there is a clear bond between [S.T.P., Mother and maternal grandmother].
...
60. That the respondent father has a long history of involvement with the respondent mother and the maternal grandmother. [Mother and Father] have maintained an on again off again relationship for the past 16 years. There is cause for concern if he relied on the information provided by [Mother and/or maternal grandmother]. [Father] accepted, without question, the information provided by [Mother and maternal grandmother]. For example, they informed him that he could not participate in visits with [S.T.P.], he could not attend the court hearings regarding [S.T.P.], or that he no longer had any parents rights to [S.T.P.].[]
...
62. That [Father] allowed [Mother and maternal grandmother] to work towards reunification with [S.T.P.]. Although aware of [S.T.P.'s] out of home placement since January 2007, he took no affirmative action to become involved with [S.T.P.'s] case until August 2008....
...
71. That [Father] agreed to obtain/maintain safe, stable, appropriate, and permanent housing. While out of jail, [Father], with permission, resided with [S.T.P.'s] paternal grandmother. He has not accomplished this goal.
72. That [Father] maintained weekly contact with the Petitioner until the first week in December 2008. [Respondent father] has not maintained consistent contact with the Petitioner since December 2008.
...
79. That there is no credible evidence that either of the respondent parents or the maternal grandmother completed the recommended and/or any other substance abuse treatment program. Likewise, there is no verification that the respondent parents and the maternal grandmother have the ability to maintain sobriety on an on-going basis. In view of the fact that [Mother] and [maternal grandmother] failed to comply with the treatment team recommendations and the changed goal to adoption, they were discharged from the F.I.R.S.T. program. Neither graduated from the Family Drug Treatment Court *229 Program. Furthermore, at the time of the termination hearing, neither [maternal grandmother] nor [Mother] was participating in NA/AA meetings.
...
81. That the respondent parents are not able, together or independently, to provide appropriate care for [S.T.P.].
82. That [Mother and Father] have always relied on [maternal grandmother] to meet [S.T.P.'s] needs and fill in the parenting gaps created by the respondent parents.
83. That [Mother, Father, and maternal grandmother] continue to struggle with their substance abuse problems.
84. That [Father and Mother] have not corrected the issues that led to the juvenile's out of home placement. They failed to demonstrate reasonable progress under the circumstances in correcting the conditions that led to the juvenile's out of home placement. Consequently, the respondent parents are not in a position now or the foreseeable future to appropriately care or provide a safe, stable, and permanent home for the juvenile. Given the respondent parents lack of progress regarding the mediated case plan and Out of Home Family Services Agreement, this situation is likely to continue indefinitely.
85. That Dr. Bridgette also assessed [S.T.P.'s] psychological, developmental, and safety needs. [S.T.P.] has unique needs.
86. That in January 2008, [S.T.P.] completed his 1st session with Dr. Bridgette. At the end of the session, Dr. Bridgette concluded that [S.T.P.] exhibited a severe learning disability and had a difficult time verbalizing his thoughts and answers. Therefore it is critical for [S.T.P.], in order to be successful and reach his full potential, needs a very stable home environment free from interpersonal conflict, consistent and calmly applied discipline methods, and calm environment. [S.T.P.] will need consistent support to improve his social skills. Additionally, [S.T.P.] needs a caretaker who actively participates in his treatment, actively works with the educational system to ensure [S.T.P.] continues with his IEP. The caretaker should also ensure that his other educational needs are addressed as well as consistently monitoring his medication regime. [S.T.P.] will continue to need individual therapy to address his emotions, behaviors, and social skills.
...
88. That Dr. Bridgette could not recommend physical custody of [S.T.P. to maternal grandmother]. Additionally, he recommended no contact between [Mother and S.T.P.] until [Mother] overcomes her substance abuse problems and life style problems.
89. That [maternal grandmother] is unable to move beyond her parenting techniques which are not helpful but damaging to [S.T.P.]. The juvenile needs parenting techniques that are consistent and stable. Additionally, he needs a parent that exhibits effective communication skills and an understanding of the world. If these skills are not provided, then the result will be confusion to [S.T.P.].
90. That the maternal grandmother and the respondent mother unfortunately treated and continue to treat [S.T.P.] as much younger than his real age. [Maternal grandmother] sometimes treated [S.T.P.] as a 4 year old and then sometimes a 10 year old. [Mother and maternal grandmother] withheld information from [S.T.P.] which in the longer run will result in more damage and pain to [S.T.P.]. For example, they did not tell or address the issue that [S.T.P.'s] dog, Bruiser, was deceased. The motive for the maternal grandmother's behaviors and misapplied techniques/parenting skills arose, according to the maternal grandmother's testimony, as a result of her love for [S.T.P.].
...
94. That on May 12, 2009, the Petitioner presented evidence that [S.T.P.] was in a potential adoptive placement. When the parties returned on May 26, 2009, [S.T.P.] had been moved from this placement. Ms. Weinstein testified that [S.T.P.'s] teacher and another foster parent expressed an interest in providing a permanent home for [S.T.P.]. It is troubling to the Court that within the last 2 weeks, the possible adoptive *230 home was disrupted. [Mother] throughout the case raised concerns about [S.T.P.'s] care. [Mother and maternal grandmother] have tried to remain involved in [S.T.P.'s] life.
95. That Court finds, after balancing [S.T.P.'s bond with the Mother and maternal grandmother] and possibility of an adoptive placement that will be able to meet [S.T.P.'s] special needs, finds that termination [of] parental rights is in [S.T.P.'s] best interest.
96. That the evidence of the respondent parents' and [maternal grandmother's] consistent actions make it impossible for the Court to find that they will ever have the ability to meet [S.T.P.'s] needs. [S.T.P.] more than other juveniles, needs consistency. Life with the respondent's and [maternal grandmother] was chaotic and inconsistent. [Mother] due to her substance abuse and mental health issues is in and out of [S.T.P.'s] life.
...
98. That the goal of the case is adoption. The juvenile needs a safe, stable, appropriate, and permanent environment. Finding a safe, stable, and permanent environment can only be accomplished through adoption. The only barrier to adoption is termination of parental rights. Termination of parental rights would assist in the adoption process.
On appeal, Mother has not challenged any of the above findings, and they are presumed to be correct and supported by competent evidence. In re Moore, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982) (citations omitted), appeal dismissed, 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983). The district court's uncontested findings demonstrate that the district court properly considered the required factors listed in N.C. Gen.Stat. § 7B-1110(a). Contrary to Mother's argument, the termination of her parental rights does further the plan of adoption. The district court found that S.T.P. is in need of a stable and permanent environment. Terminating Mother's parental rights is a step toward giving S.T.P. a stable and permanent environment. Based upon these findings, the trial court did not abuse its discretion in terminating Mother's parental rights.
This argument is without merit.
We affirm the trial court's order terminating the parental rights of respondents.
The respondents have failed to argue their remaining assignments of error, and they are deemed waived pursuant to Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure.
AFFIRMED.
Chief Judge MARTIN and Judge ELMORE concur.