IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1002

 Filed: 6 August 2019

Surry County, No. 09 JA 64

IN THE MATTER of: C.M.B., Juvenile.

 Appeal by respondent from order entered 18 June 2018 by Judge William F.

Southern, III, in District Court, Surry County. Heard in the Court of Appeals 13

March 2019.

 J. Clark Fischer, for appellee William Brickel (Custodian).

 Assistant Appellant Defender Annick Lenoir-Peek for respondent-mother.

 STROUD, Judge.

 Respondent-mother appeals an order staying proceedings and transferring

jurisdiction of this juvenile proceeding under Chapter 7B to Tennessee. Because the trial

court failed to hold an evidentiary hearing before entering the order on appeal, we reverse

and remand for a new hearing and entry of an order consistent with this opinion.

 I. Background
 IN RE: C.M.B.

 Opinion of the Court

 On 27 July 2009, the Surry County Department of Social Services (“DSS”) filed

a petition alleging Jane1 was a neglected juvenile, and on 18 September 2009 the trial

court adjudicated her as neglected. In a review hearing order, on 17 December 2009,

the trial court noted Jane was “in the care of a maternal great aunt [, Ms. Brickel],

the placement has gone well[,]” and Mother was now residing in Virginia. Jane

continued to do well with her aunt, as noted in the 22 April 2010 permanency

planning order. On 8 July 2010, the trial court entered another permanency planning

order which found Mother was not present at the hearing and it was not known where

she was “residing.”

 About six months later, on 19 January 2011, the trial court found that Jane

had been residing with the Brickels since September of 2009, placement had “gone

well and the BRICKELS have expressed a willingness and desire to continue to

provide care and placement for the child.” Mother had not been in contact with DSS,

and DSS was relieved of reunification efforts. The permanent plan for Jane was

“custody and guardianship with a relative[.]” The trial court ordered the Brickels

receive “legal and physical care, custody, and control of” Jane, appointed the Brickels

as joint guardians of Jane, “released and discharged” Mother’s attorney, and waived

future review hearings.

1 A pseudonym is used to protect the identity of the minor involved.

 -2-
 IN RE: C.M.B.

 Opinion of the Court

 On 6 August 2014, Mother and the Brickels entered into a Consent Order.

Neither DSS nor a guardian ad litem participated in entry of the Consent Order.

Mother and the Brickels agreed Jane would remain in the custody of the Brickels,

and Mother would have visitation. The order noted that “[t]he current action is a

review hearing” initiated by Mother’s “Motion for Review” filed on 11 February 2014.

The consent order noted that in late 2013 or early 2014, the Brickels had moved to

Tennessee. The order included these findings of fact:

 13. The parties also stipulate that this consent order
 resolves all issues that are currently pending
 between the parties and, upon entry of this consent
 order, that there are no other outstanding issues
 concerning the child’s placement and welfare in this
 action.

 14. DSS has been released from reunification efforts in
 this action. (See Permanency Planning Order,
 Paragraph No. 8, dated January 19, 2011).

 15. DSS has also been relieved of any further
 responsibility in this matter. (See Permanency
 Planning Order, Paragraph No. 18, dated January
 19, 201[1]).

 16. The guardian ad litem has been discharged in this
 action. (See Permanency Planning Order,
 Paragraph No. 18, dated January 19, 2011).

 17. Because DSS and the GAL have been
 released/discharged, these agency’s attorneys’
 consent to this consent order is unnecessary.

The order decreed that “the child shall continue to remain in the custody of” the

 -3-
 IN RE: C.M.B.

 Opinion of the Court

Brickels. It then set forth a detailed visitation schedule for Mother on weekends,

holidays, and during the summer school recess; it also made provisions for the

transfer of physical custody “at a location that is exactly one-half (1/2) of the distance

between Harrimon, Tennessee and Dobson, North Carolina.” In addition, the order

decreed:

 4. DSS is continued to be relieved of reunification and
 of any responsibility in this action.

 5. The GAL is continued to be discharged in this action.

 6. This consent order is a final order and it disposes of
 all outstanding issues in this action.

 7. Attorney Marion Boone is hereby released and
 discharged and attorney Jody P. Mitchell is hereby
 released and discharged.

 A few years later, in November of 2017, the Brickels filed a motion in

Tennessee to register the North Carolina custody order under “T.C.A. 36-6-229” and

in the same motion requested modification of the North Carolina order by suspending

Mother’s visitation. “T.C.A. 36-6-229” provides, “A child-custody determination

issued by a court of another state may be registered in this state, with or without a

simultaneous request for enforcement, by sending to the appropriate court in this

state[.]” Tenn. Code Ann. § 36-6-229 (2017). T.C.A. § 36-6-229 allows for registration

of child custody orders from another state and is part of Tennessee’s Uniform Child-

Custody Jurisdiction and Enforcement Act (“UCCJEA”). See id. Registration of the

 -4-
 IN RE: C.M.B.

 Opinion of the Court

North Carolina custody order in Tennessee allowed for enforcement of the order in

Tennessee, but not modification; registration of the order alone does not confer

jurisdiction under the UCCJEA. See Tenn. Code Ann. § 36-6-230(b) (2017) (“A court

of this state shall recognize and enforce, but may not modify, except in accordance

with this part, a registered child-custody determination of a court of another state.”)

Yet the Brickels’ motion also requested modification of the North Carolina order,

based upon these allegations:

 d. Upon information and belief, the home of . . .
 [Mother] is not suitable for visits with the minor
 child.

 e. That the minor child is schedule[d] to visit with . . .
 [Mother] at the beginning of Winter Break and
 Petitioner seeks that this visit be suspended pending
 a full hearing on this matter.

 Mother then filed a pro se motion in Tennessee to dismiss the Brickels’

motions. Mother also filed three pro se motions in North Carolina between December

of 2017 and January of 2018: (1) a motion for review requesting an “emergency”

revocation of the Brickels as guardians and that she be appointed as Jane’s guardian;

(2) a motion and order to show cause claiming the Brickels had violated the custody

agreement, and (3) a motion requesting North Carolina to invoke jurisdiction as it

was the “more appropriate forum[.]” (Original in all caps.)

 The Tennessee court heard the Brickels’ motions to register and modify the

custody order on 13 December 2017. Mother was present and testified at the hearing

 -5-
 IN RE: C.M.B.

 Opinion of the Court

in Tennessee. By order entered 12 January 2018, the Tennessee court entered an

“ORDER OF TRANSFER TO COURT HAVING JURISDICTION UNDER TCA § 36-

6-216 and 229” (“Order of Transfer”).2 The Tennessee “Order of Transfer” found that

the minor child and Brickels had lived in Tennessee since 2014 and Mother resided

in Virginia. Based upon the findings that neither the child not nor any parties had

resided in North Carolina since 2014, the Tennessee court ordered “that this Court is

the proper forum to have jurisdiction regarding the minor child, . . . and jurisdiction

is hereby transferred.” A handwritten notation at the bottom of the order states,

“Court directs Ms. Hogg to forward a copy of this order to the Court in Surry County,

N.C.”

 By order entered on 18 January 2018, the Tennessee court granted the

Brickel’s motion to modify visitation, modifying Mother’s visitation to allow her only

limited supervised visitation in Tennessee. The order notes it is based upon several

statutes, including Tenn. Code Ann. § 36-6-216, “Initial custody determination;

jurisdiction[;]” -218, “Child-custody determination in another state; modification[;]”

and -219, which provides for “[t]emporary emergency jurisdiction” to enter an order

if “necessary in an emergency to protect the child because the child, or a sibling or

2 Tenn. Code Ann. § 36-6-216 addresses jurisdiction for an “[i]nitial custody determination” and Tenn.
Code Ann. § 36-6-229 addresses registration of an out of state custody order; neither statute addresses
modification jurisdiction under the UCCJEA. T.C.A. §§ 36-6-216; -229 (2017). There is no indication
in the order or our record about whether the Tennessee court did or did not communicate with the
North Carolina court prior to entry of the order.

 -6-
 IN RE: C.M.B.

 Opinion of the Court

parent of the child, is subjected to or threatened with mistreatment or abuse.” T.C.A.

§§ 36-6-216, -218, -219. But from the findings of fact in the order, it does not appear

Tennessee was exercising emergency jurisdiction, as there are no findings of an

emergency. Instead, the Tennessee court found only “[t]hat based upon the evidence

and testimony presented, there has been a substantial change of circumstances

sufficient to temporarily modify the terms of the prior Consent Order.”

 On 29 January 2018, the Brickels filed an unverified motion in North Carolina

to “stay” Mother’s pending motions or to transfer jurisdiction to Tennessee because

North Carolina was an “inconvenient forum” under North Carolina General Statute

§ 50A-207. The Tennessee orders were attached as exhibits to this motion. The trial

court in North Carolina began holding a hearing on the pending motions by the

Brickels and Mother on 1 February 2018. The Brickels were represented by counsel,

and Mother appeared pro se. The trial court heard arguments from the Brickels’

counsel and from Mother. The trial court then inquired if Mother would like court-

appointed counsel, and she requested court-appointed counsel. The trial court then

announced that “[i]n reviewing [the Tennessee] order, I believe he has made his order

very clear about transferring jurisdiction to himself, but I believe I need to discuss

that with him before I make any further order in this Surry County matter.” The

trial court then set the next court date, for completion of the hearing, for 1 March

2018.

 -7-
 IN RE: C.M.B.

 Opinion of the Court

 On 1 March 2018, Mother’s newly-appointed counsel and the Brickels’ counsel

appeared, and the trial court noted that he had not yet been able to discuss the case

with the judge in Tennessee and continued the case to 5 April 2018. On 2 March

2018, the trial court entered an order continuing the completion of the hearing to 5

April 2018 “for communication between Surry County and Tennessee to take place.”

(Original in all caps.) But the trial court never resumed the hearing which started

on 1 February 2018. Instead, on 15 March 2018, a District Court Judicial Assistant

for the Surry County District Court sent an email to the Brickels’ counsel3 stating

that “Judge Southern has spoken with Judge Humphries in TN and agreed

jurisdiction is in Tennessee. Judge Southern request[s] that you prepare an order

and notify all parties there will be no need to appear on 4/5/18.” On 18 June 2018,

the North Carolina trial court entered an order allowing the Brickels’ motion to “stay”

and “transfer” jurisdiction based on North Carolina being an inconvenient forum.

Mother appeals.

 II. Appellate Jurisdiction

 Mother contends the trial court erred in determining North Carolina was an

inconvenient forum under North Carolina General Statute 50A-207 and transferring

the action to Tennessee. We first note that Mother argues that we have jurisdiction

to consider this appeal because it is a final order, and we agree. As far as North

3The email was also copied to an individual Mother’s brief identifies as the juvenile clerk. Neither
Mother nor her counsel was included on the email.

 -8-
 IN RE: C.M.B.

 Opinion of the Court

Carolina is concerned, the order on appeal is final, since it does not leave the case

open “for further action by the trial court in order to settle and determine the entire

controversy[,]” Veazey v. City of Durham, 231 N.C. 357, 362, 57 S.E.2d 377, 381

(1950), but transfers the matter to Tennessee. We therefore have jurisdiction to

consider Mother’s appeal.

 III. Distinction between Juvenile Proceedings under Chapter 7B and
 Custody Proceedings under Chapter 50

 Although the parties’ arguments rely almost exclusively on the UCCJEA, the

issues here are actually controlled by Chapter 7B. Before addressing the substantive

issues, we stress that this case arises in a juvenile neglect proceeding initiated under

Chapter 7B, but somewhere along the way, Mother, the Brickels, and the trial courts

in North Carolina and Tennessee essentially began treating the case as if it were a

Chapter 50 custody proceeding. Although DSS initiated this case in 2009 because of

an investigation of neglect and there was an adjudication of neglect, DSS has not been

directly involved in the case since 2011. DSS did not participate in this appeal nor

did a guardian ad litem participate on behalf of Jane, so we do not have the benefit

of briefs from DSS or guardian ad litem. The only “parties” appearing or

participating before the trial and this Court are Mother and the Brickels. But this

case was never transferred as a Chapter 50 private custody matter under North

Carolina General Statute § 7B-911. See N.C. Gen. Stat. § 7B-911(a) (2017) (“Upon

placing custody with a parent or other appropriate person, the court shall determine

 -9-
 IN RE: C.M.B.

 Opinion of the Court

whether or not jurisdiction in the juvenile proceeding should be terminated and

custody of the juvenile awarded to a parent or other appropriate person pursuant to

G.S. 50-13.1, 50-13.2, 50-13.5, and 50-13.7.”). Although the UCCJEA is applicable to

abuse, neglect and dependency proceedings under Chapter 7B actions, the trial

court’s jurisdiction over this case is based upon Chapter 7B, and the trial court has

not terminated its jurisdiction.

 The last order entered by the North Carolina juvenile court with the

involvement of DSS and the GAL was a Permanency Planning Order entered under

“NCGS 907(b)” on 19 January 2011. The 2011 order ordered that “legal and physical

care, custody, and control of [the minor child] is hereby granted to . . . [the Brickels]

and, further, the same are hereby appointed as joint guardians of the child[.]” The

trial court ordered that “the SURRY COUNTY DEPARTMENT OF SOCIAL

SERVICESSURRY COUNTY DEPARTMENT OF SOCIAL SERVICES is relieved of

further responsibility in this matter. The guardian ad litem is hereby discharged.”

Counsel for both Mother and Father were also released. The trial court also waived

future review hearings in accordance with “N.C.G.S. 7B-906(b)[.]”4 But the trial court

did not terminate its jurisdiction. See In re S.T.P., 202 N.C. App. 468, 473, 689 S.E.2d

223, 227 (2010) (“[W]e hold that the district court did not terminate its jurisdiction

by its use of the words ‘Case closed.’”) Nor did the 2011 order return Mother to her

4 This version of the statute was repealed in 2013. See N.C. Gen. Stat. § 7B-907 (2017).

 - 10 -
 IN RE: C.M.B.

 Opinion of the Court

pre-petition status by returning Jane to her custody. Thus, the juvenile court’s

jurisdiction continues “until terminated by order of the court or until the juvenile

reaches the age of 18 years or is otherwise emancipated, whichever occurs first.” N.C.

Gen. Stat. § 7B–201(a) (2017). Thereafter, the trial court entered its 2014 consent

order between Mother and the Brickels and again did not terminate jurisdiction.5

Under North Carolina General Statute § 7B-201, once the trial court had jurisdiction

over Jane, it retains jurisdiction until she attains the age of 18 or the trial court

terminates its jurisdiction. N.C. Gen. Stat. § 7B-201(a) (2017) (“When the court

obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by

order of the court or until the juvenile reaches the age of 18 years or is otherwise

emancipated, whichever occurs first.”). Only North Carolina can terminate its own

juvenile court jurisdiction; a court in Tennessee cannot. See id.

 The North Carolina juvenile court has never terminated its jurisdiction in this

matter and even the order on appeal does not clearly terminate jurisdiction under

North Carolina General Statute § 7B-201. Instead, based solely upon the UCCJEA

and not Chapter 7B, the order on appeal concluded both North Carolina and

5 In fact, in its 2014 consent order the trial court noted DSS “continued to be relieved of reunification”
and “[t]he GAL is continued to be discharged[,]” (emphasis added), because the trial court had already
relieved DSS, the GAL, and counsel in its 2011 order. By exercising jurisdiction in 2014 -- after
relieving DSS, the GAL, and counsel in 2011 -- the trial court demonstrated it retained jurisdiction.
For a thorough analysis on when a juvenile court terminates its jurisdiction see Rodriguez v.
Rodriguez, 211 N.C. App. 267, 710 S.E.2d 235 (2011). The 2014 consent order, like its 2011 predecessor,
also has no affirmative language terminating jurisdiction nor does either party contend it did -- Mother
contends North Carolina has always been the appropriate jurisdiction and the Brickels filed a motion
to transfer jurisdiction to Tennessee.

 - 11 -
 IN RE: C.M.B.

 Opinion of the Court

Tennessee had subject matter jurisdiction and both “stayed” and “transferred” the

North Carolina action. The order includes these relevant conclusions of law:

 a. The Court has subject matter jurisdiction over this
 action. The Court takes judicial notice of the
 UCCJEA and determines that the State of
 Tennessee also has appropriate subject matter
 jurisdiction over this action.

 ....

 c. The Court concludes as a matter of law that the
 State of North Carolina is no longer a convenient
 forum for this matter.

 d. The Court concludes as a matter of law that it
 exercises its discretion and relinquishes jurisdiction
 over this matter to the State of Tennessee for any
 further proceedings herein.

 e. The Court further concludes as a matter of law that
 it is exercising its discretion to stay these
 proceedings, and/or to transfer jurisdiction of these
 proceedings to Tennessee, due to the pendency of the
 matters pending in Roane County Tennessee.

 The order then decreed as follows:

 1. This matter is stayed for any further proceedings in
 Surry County North Carolina.

 2. This matter is hereby transferred to the Roane
 County court for any further proceedings and/or
 dispositions.

 3. The Surry County Clerk of Superior Court shall
 forthwith prepare the Court file in this matter for
 transfer to the Roane County Tennessee Clerk of
 Circuit Court.

 - 12 -
 IN RE: C.M.B.

 Opinion of the Court

 North Carolina General Statute § 50A-207 directs the trial court to “stay”

proceedings if it “determines that it is an inconvenient forum and that a court of

another state is a more appropriate forum” but this stay is conditioned upon the

requirement “that a child-custody proceeding be promptly commenced in another

designated state[.]” N.C. Gen. Stat. § 50A-207(c) (2017). A “stay” of proceedings is

not a termination of the trial court’s jurisdiction, but under a stay, a court refrains

from acting temporarily and explicitly retains jurisdiction to lift the stay and resume

the case if necessary. See generally In re M.M., 230 N.C. App. 225, 229, 750 S.E.2d

50, 53 (2013) (“If a trial court considering a child custody matter determines that the

current jurisdiction is an inconvenient forum and that another jurisdiction would be

a more appropriate forum, it shall stay the proceedings upon condition that a child

custody proceeding be promptly commenced in another designated state. It is well

established that the word shall is generally imperative or mandatory. The trial court

here simply purported to transfer jurisdiction, effectively dismissing the case in

North Carolina. It did not stay the present case and condition the stay on the

commencement of a child custody proceeding in Michigan. The record before us does

not indicate that there is or ever has been a custody proceeding of any sort regarding

Margo in Michigan. Failure to condition an order transferring jurisdiction on the

filing of a child custody proceeding in the new jurisdiction leaves the child and the

proceedings in legal limbo, something that the Uniform Child–Custody Jurisdiction

 - 13 -
 IN RE: C.M.B.

 Opinion of the Court

Act is intended to prevent. It also ignores the mandatory procedure contained in N.C.

Gen. Stat. § 50A–207(c).” (citations and quotation marks omitted)). Of course, since

the Tennessee custody proceeding had already been filed, a stay may not be needed.

 Chapter 7B does not provide an option for “transfer” but instead provides for

the trial court to either terminate the juvenile court jurisdiction and return the

parents to their pre-petition status or to transfer the matter to a private custody case

under Chapter 50:

 When the court’s jurisdiction terminates, whether
 automatically or by court order, the court thereafter shall
 not modify or enforce any order previously entered in the
 case, including any juvenile court order relating to the
 custody, placement, or guardianship of the juvenile. The
 legal status of the juvenile and the custodial rights of the
 parties shall revert to the status they were before the
 juvenile petition was filed, unless applicable law or a valid
 court order in another civil action provides otherwise.
 Termination of the court’s jurisdiction in an abuse, neglect,
 or dependency proceeding, however, shall not affect any of
 the following:
 (1) A civil custody order entered pursuant to G.S.
 7B-911.6
 (2) An order terminating parental rights.
 (3) A pending action to terminate parental rights,
 unless the court orders otherwise.
 (4) Any proceeding in which the juvenile is
 alleged to be or has been adjudicated undisciplined
 or delinquent.
 (5) The court’s jurisdiction in relation to any new
 abuse, neglect, or dependency petition that is
 filed.

6 North Carolina General Statute § 7B-911 addresses Chapter 50. See N.C. Gen. Stat. § 7B-911 (2017).

 - 14 -
 IN RE: C.M.B.

 Opinion of the Court

N.C. Gen. Stat. § 7B-201(b) (2017). Thus, if the trial court were to determine

Tennessee is a more appropriate forum under North Carolina General Statute § 50A-

207 and the Tennessee proceeding will address the child custody issues, it may

terminate the juvenile court’s jurisdiction under North Carolina General Statute §

7B-201 to allow the matter to be addressed in that court. See N.C. Gen. Stat. § 7B-

201.

 IV. Inconvenient Forum

 This brings us to the present issue raised by Mother who contends the trial

court erred in “transferring” the case to Tennessee based upon its determination that

North Carolina is an inconvenient forum under the UCCJEA. See generally N.C.

Gen. Stat. § 50A-207.

 (a) A court of this State which has jurisdiction
 under this Article to make a child-custody determination
 may decline to exercise its jurisdiction at any time if it
 determines that it is an inconvenient forum under the
 circumstances, and that a court of another state is a more
 appropriate forum. The issue of inconvenient forum may be
 raised upon motion of a party, the court’s own motion, or
 request of another court.

 (b) Before determining whether it is an
 inconvenient forum, a court of this State shall consider
 whether it is appropriate for a court of another state to
 exercise jurisdiction. For this purpose, the court shall allow
 the parties to submit information and shall consider all
 relevant factors, including:
 (1) Whether domestic violence has
 occurred and is likely to continue in the future and which
 state could best protect the parties and the child;

 - 15 -
 IN RE: C.M.B.

 Opinion of the Court

 (2) The length of time the child has resided
 outside this State;
 (3) The distance between the court in this
 State and the court in the state that would assume
 jurisdiction;
 (4) The relative financial circumstances of
 the parties;
 (5) Any agreement of the parties as to
 which state should assume jurisdiction;
 (6) The nature and location of the evidence
 required to resolve the pending litigation, including
 testimony of the child;
 (7) The ability of the court of each state to
 decide the issue expeditiously and the procedures
 necessary to present the evidence; and
 (8) The familiarity of the court of each
 state with the facts and issues in the pending litigation.

 (c) If a court of this State determines that it is an
 inconvenient forum and that a court of another state is a
 more appropriate forum, it shall stay the proceedings upon
 condition that a child-custody proceeding be promptly
 commenced in another designated state and may impose
 any other condition the court considers just and proper.

 (d) A court of this State may decline to exercise
 its jurisdiction under this Article if a child-custody
 determination is incidental to an action for divorce or
 another proceeding while still retaining jurisdiction over
 the divorce or other proceeding.

N.C. Gen. Stat. 50A-207.

 Mother’s brief contends that only North Carolina’s court had the authority to

decide “who has jurisdiction in this matter” and that North Carolina “was bound to

take evidence and follow the” UCCJEA. Mother argues that the trial court failed to

follow the proper procedure under the UCCJEA, and the order must be reversed.

 - 16 -
 IN RE: C.M.B.

 Opinion of the Court

 We first note that Tennessee’s orders are not before us, and we do not purport

to determine based upon the record before us whether Tennessee complied with the

UCCJEA or made any other error under Tennessee law. But Tennessee’s order

“transferring” jurisdiction of this North Carolina juvenile matter to the Tennessee

court has no effect on North Carolina’s jurisdiction under Chapter 7B or on our

analysis. Our only question is whether there is reversible error in the North Carolina

trial court’s order.

A. Communication between Courts

 Mother’s first argument is that the trial court did not follow a proper procedure

under North Carolina General Statute § 50A-110 for its communications with the

Tennessee court. Where the parties do not participate in the communication, the

statute requires a record to be made of the communication and the parties notified of

the record:

 (b) The court may allow the parties to participate in the
 communication. If the parties are not able to participate in
 the communication, they must be given the opportunity to
 present facts and legal arguments before a decision on
 jurisdiction is made. . . . .

 ....

 (d) Except as otherwise provided in subsection (c), a
 record must be made of a communication under this
 section. The parties must be informed promptly of the
 communication and granted access to the record.

 (e) For the purposes of this section, “record” means

 - 17 -
 IN RE: C.M.B.

 Opinion of the Court

 information that is inscribed on a tangible medium or that
 is stored in an electronic or other medium and is
 retrievable in perceivable form.

N.C. Gen. Stat. § 50A-110 (2017). Mother argues that “[t]he only record of the

communication between the two courts is a one line email sent by the judge’s judicial

assistant to the Brickels’ trial counsel, but not [Mother’s] trial counsel, and copied to

the juvenile clerk.”

 Mother is correct that the email indicates only that it was send only to the

Brickels’ counsel, which would be inappropriate, as it should have been sent

simultaneously to counsel for both parties. But we also note that the trial court

informed Mother on 1 February and her counsel on 1 March that it would be

communicating with the Tennessee judge; that was the reason for the continuances.

Neither Mother nor her counsel requested to participate in the communication.

Further, the email was apparently included in the court file as it is a part of our

record on appeal, and there is no indication Mother was not “informed promptly” of

the communication or that she was not “granted access” to the court file. Id. The

email is also a “record” as defined by North Carolina General Statute § 50A-110 as it

is “information that is inscribed on a tangible medium or that is stored in an

electronic or other medium and is retrievable in perceivable form.” Id.

 Under North Carolina General Statute § 50A-110, Mother was also entitled to

have an “opportunity to present facts and legal arguments before a decision on

 - 18 -
 IN RE: C.M.B.

 Opinion of the Court

jurisdiction is made” if the parties did not participate in the communication between

the courts. Id. Although the statute does not specify if this “opportunity” must be

before or after the communication, we need not make this determination here.

Mother presented some “facts and legal argument” to the trial court on 1 February

2018, before her counsel was appointed, but she did not testify or present evidence.

Id. On 1 February 2018, the trial court heard only arguments and no sworn

testimony. The only documents filed with the trial court were unverified motions. At

that point, the trial court had heard no evidence regarding the facts of the case, only

arguments. The trial court continued the case and set another date for the parties to

return – presumably for an evidentiary hearing on the four pending motions -- after

its communication with Tennessee. The trial court appointed counsel for Mother, but

the full hearing scheduled for 5 April 2018 was canceled by the trial court. No

evidentiary hearing was ever held.

B. Findings of Fact

 Mother argues that the court had insufficient evidence upon which it could

base its findings of fact or a decision on whether North Carolina was an inconvenient

forum. We agree.

 Even if we assume the trial court correctly conducted and documented its

communications with the Tennessee court, we must reverse the order because there

was no evidence to support the trial court’s findings of fact. The order on appeal

 - 19 -
 IN RE: C.M.B.

 Opinion of the Court

includes findings of fact regarding the factors listed in North Carolina General

Statute § 50A-207 for purposes of determining that North Carolina is an inconvenient

forum and related conclusions of law. We need not address each finding of fact

specifically since none is supported by the evidence. Although some factors could

possibly be addressed based upon the trial court’s record without evidence from the

parties, such as the familiarity of the court with the case, most require some evidence

regarding the parties and child. Since there was no evidence, the findings of fact

cannot be supported. See Crews v. Paysour, ___ N.C. App. ___, ___ 821 S.E.2d 469,

472 (2018) (“[A]lthough counsel discussed the issue with the trial court, the parties

did not stipulate to amounts paid since the prior order or agree on how any

overpayment by Father should be addressed. And arguments of counsel are not

evidence: It is axiomatic that the arguments of counsel are not evidence.” (citations,

quotation marks, and brackets omitted)). In addition, the motions before the trial

court were unverified, and neither party presented any affidavits or other

documentary evidence. We also note that when Mother presented her argument to

the trial court on 1 February 2018, she had no attorney, but she was entitled to court-

appointed counsel. The trial court recognized this problem and appointed counsel for

Mother, but since the trial court canceled the completion of the hearing, Mother’s

counsel never had the opportunity to provide meaningful representation. With no

evidence to support the findings of fact, the trial court’s conclusions of law based upon

 - 20 -
 IN RE: C.M.B.

 Opinion of the Court

the findings of fact must fail also.

 V. Conclusion

 We therefore reverse and remand for the trial court to hold a new hearing on

the parties’ motions and to determine whether to terminate jurisdiction under North

Carolina General Statute § 7B-201. The trial court should again communicate with

the Tennessee court, as directed by North Carolina General Statute § 50A-110 and

should allow the parties the opportunity either “to participate in the communication”

or “to present facts and legal arguments before a decision on jurisdiction is made.”

N.C. Gen. Stat. § 50A-110. If the trial court again determines that North Carolina is

an inconvenient forum under North Carolina General Statute § 50A-207, depending

upon the status of the Tennessee case, the trial court could stay the proceedings under

North Carolina General Statute § 50A-207 or may terminate its jurisdiction under

North Carolina General Statute § 7B-201. Although nothing in this opinion should

be interpreted as expressing an opinion on whether North Carolina is an inconvenient

forum under North Carolina General Statute § 50A-207, we note that the trial court

also has the option of terminating the juvenile court’s jurisdiction and transferring

the case to a private Chapter 50 matter in North Carolina under North Carolina

General Statute § 7B-911. But unless the trial court determines that the case should

remain under the jurisdiction of the juvenile court of Surry County, the trial court’s

order should clearly terminate the juvenile court’s jurisdiction. The trial court’s order

 - 21 -
 IN RE: C.M.B.

 Opinion of the Court

must be based upon sworn testimony or other evidence, and Mother is entitled to

court-appointed counsel at all proceedings as long as the matter remains in juvenile

court.

 REVERSED AND REMANDED.

 Judges INMAN and ZACHARY concur.

 - 22 -